UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
RICHARD VARNEY,                                  :
                                                 :
                          Plaintiff,             :   Case No. 07-CV-695(LDW)(KST)
                                                 :
            - against -                          :   **ELECTRONICALLY FILED**
                                                 :
NYNEX MANAGEMENT PENSION PLAN,                   :
et al.,                                          :
                          Defendants.            :
                                                 :
                                                 :
--------------------------------------------------------------- x

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST FOR
DISCOVERY OUTSIDE THE ADMINISTRATIVE RECORD</u>**

 

 

 

 

                                Frederick G. Sandstrom (admitted *pro hac vice*)
                                COVINGTON & BURLING LLP
                                1201 Pennsylvania Ave., N.W.
                                Washington, D.C.  20004-2401
                                202-662-6000
                                202-662-6291 (Facsimile)

March 26, 2010                  *Attorney for Defendants*

Defendants respectfully submit this opposition to plaintiff Richard Varney's March 11, 2010 memorandum requesting additional discovery beyond the administrative record for his ERISA benefit claims. For the reasons set forth below, plaintiff fails to demonstrate that there is a "reasonable chance" that further discovery will satisfy the "good cause" requirement applied by this Court to admit extra-record evidence in an ERISA case governed by the arbitrary and capricious standard of review.

## PROCEDURAL HISTORY

Plaintiff challenges the Verizon Claims Review Committee's denial of his claim for benefits under the NYNEX Management Pension Plan ("NYNEX Plan"). Plaintiff asserts that he is entitled to a benefit as the estate administrator and surviving adult son of Lillian Varney, a former NYNEX employee. Ms. Varney was employed by NYNEX and its predecessors from 1980 to December 1993, and died in January 2006 while receiving Long Term Disability benefits from Verizon.

This lawsuit has a long history. In May 2006, Hewitt Associates, the benefit administrator for the Verizon Management Pension Plan ("Verizon Plan"), sent plaintiff an erroneous notification indicating that he may be eligible to receive a lump sum payment of $99,269.74 as Ms. Varney's surviving beneficiary under the Verizon Plan. (Dkt. 1, ¶¶ 28-30.) Hewitt quickly realized that its determination had been in error, and that plaintiff was not entitled to any survivor benefit under the governing terms of the NYNEX Plan in effect when Ms. Varney terminated employment in December 1993. Hewitt promptly notified plaintiff of its mistake in July 2006, advised plaintiff of his right to file an administrative benefit claim under ERISA, and sent plaintiff the appropriate claim form. (*Id.*, ¶¶ 32-38.)

Plaintiff did not file an administrative benefit claim at that time. Instead, he filed suit in February 2007. (Dkt. 1.) Verizon moved to dismiss, asserting (amongst other grounds) that plaintiff's claims were premature because he had not yet pursued his administrative remedies under the NYNEX Plan and its successor, the Verizon Plan. Verizon's fully-briefed motion was filed with the Court on December 12, 2007. (Dkt. 26.)

Prior to opposing Verizon's motion to dismiss, plaintiff obtained permission to conduct discovery regarding Ms. Varney's employment and disability status at the time of her death. (Dkt. 12.) Between June and September 2007, plaintiff served Verizon with 51 wide-ranging document requests and 19 interrogatories relating to the NYNEX and Verizon Plans, Hewitt's erroneous benefit notification, and communications between Hewitt and Verizon regarding Ms. Varney's benefit rights. (Sandstrom Decl., Exs. A-E.) These requests included:

- "[Y]our complete benefits file for Lillian Varney including all communications of any kind, including without limitation memoranda, notations, reports, [and] summaries describing why Plaintiff's claim for benefits has been or should be denied." (*Id.*, Ex. A, Doc. Req. 20.)

- "All communications between Defendants and Hewitt concerning claims and/or inquiries received from Plaintiff in connection with benefits." (*Id.*, Ex. A, Doc. Req. 27.)

- "All communications between Hewitt and Plaintiff concerning Plaintiff's claims or inquiries relating to benefits." (*Id.*, Ex. A, Doc. Req. 28.)

- "All intra-office documents, memoranda and communications of any kind concerning claims and/or inquiries made by Plaintiff relating to benefits under the NYNEX Management Pension Plan." (*Id.*, Ex, C, Supp. Doc. Req. 1.)

- "All communications of any kind between NYNEX and/or the NYNEX Management Pension Plan and Hewitt Associates concerning claims or inquiries made by Richard Varney, or any agent or representative acting on his behalf, relating to benefits under the pension plan." (*Id.*, Ex, C, Supp. Doc. Req. 4.)

- "All documents which evidence, reflect, and/or relate to any oral or written communication between NYNEX and/or the NYNEX Management Pension Plan and Hewitt Associates regarding a lump sum benefit payment to the Estate of Lillian Varney and/or Richard Varney." (*Id.*, Ex. C, Supp. Doc. Req. 11.)

2

Verizon produced more than 3,100 pages of documents in response to plaintiff's requests. (Dkt. 23.) Plaintiff also obtained hundreds of pages of documents in response to a subpoena *duces tecum* served on Hewitt Associates, the Verizon Plan's benefits administrator. (*Id.*)

In September 2008, while Verizon's motion to dismiss was pending before the Court, plaintiff agreed to voluntarily withdraw his complaint and to submit his claims for administrative review. (Minute Order, Sept. 23, 2008.) Plaintiff filed his initial administrative claim on November 14, 2008, and that claim was denied by the Verizon Claims Review Unit on February 20, 2009. (Sandstrom Decl., Exs. F & G.). After obtaining numerous extensions from the plan administrator, plaintiff filed his administrative appeal on July 3, 2009. (*Id.*, Ex. H.) The Verizon Claims Review Committee ("Committee") denied plaintiff's appeal on September 17, 2009. (*Id.*, Ex. I.) Plaintiff thereafter moved to re-open this litigation, and the Court granted plaintiff's motion in December 2009. (Minute Order, Dec. 29, 2009.)

**STANDARD OF REVIEW**

Plaintiff's instant motion seeks leave to conduct discovery outside the administrative record for his benefit claim. But, as plaintiff concedes, the Committee has discretionary authority to interpret the Verizon Plan and the NYNEX Plan and to decide claims for benefits under the terms of the plans. (Pl.'s Mem. at 6; *see also* dkt. 34.) The Committee's denial of plaintiff's claim is therefore reviewed under the arbitrary and capricious standard, and this Court's review is presumptively limited to the evidence contained in the administrative record. *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).

Plaintiff must show "good cause" to submit evidence from outside of the administrative record. *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 646-47 (2d Cir. 2002). And to conduct

3

discovery outside the record, plaintiff must show "a reasonable chance that the requested discovery will satisfy the good cause requirement." *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180 (SAS)(DFE), 2004 WL 5402553, at *7 (S.D.N.Y. Oct. 18, 2004). *See also Burgio v. Prudential Life Ins. Co.*, 253 F.R.D. 219, 230 (E.D.N.Y. 2008). To satisfy the "reasonable chance" standard, plaintiff must provide "specific examples from the administrative record" demonstrating that a conflict of interest or other procedural irregularity actually affected the Committee's denial of his claim. *Yasinoski v. Conn. Gen. Life Ins. Co.*, No. CV 07-2573 (RRM)(AKT), 2009 WL 3254929, at *10-11 (E.D.N.Y. Sept. 30, 2009). *See also Locher v. Unum Life Ins. Co.*, 389 F.3d 288, 294-96 (2d Cir. 2004).

## ARGUMENT

Plaintiff presents three boilerplate arguments in his motion for extra-record discovery, asserting that (1) Verizon has a "structural conflict of interest" as the plan sponsor and the plan administrator for the Verizon Plan, (2) "procedural irregularities" affected the Committee's denial of his administrative claim, and (3) the Committee erred in denying his benefit claims. None of plaintiff's arguments is supported by "specific examples from the administrative record" or any other evidence beyond plaintiff's own unfounded speculation.

**I.      Plaintiff Is Not Entitled to Discovery Based on a Structural Conflict of Interest.**

Plaintiff first asserts that he is entitled to discovery because Verizon has a "significant inherent conflict of interest" as the plan sponsor and the plan administrator for the Verizon Plan. (Pl.'s Mot. at 6-7.) However, a structural conflict, without more, does not satisfy the "reasonable chance" requirement. *See, e.g.*, *Locher*, 389 F.3d at 296 ("We hold that a conflicted administrator does not *per se* constitute good cause, and caution district courts that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause."); *Yasinoski*, 2009 WL 3254929, at *11 ("Such a showing falls short of satisfying the

4

standard necessary for the court to order discovery outside the administrative record."). "Under the law applied in the Second Circuit, it is well-established that a conflict of interest does not *per se* constitute 'good cause.'" *Rubino v. Aetna Life Ins. Co.*, No. CV 07-377 (LDW)(AKT), 2009 WL 910747, at *3 (E.D.N.Y. Mar. 31, 2009) (citing *Locher*).

Plaintiff speculates that Verizon "influenced" Hewitt's July 2006 correction of its erroneous benefit notification. (Pl.'s Mot. at 7.) This argument fails as a threshold matter because plaintiff's current challenge is not to Hewitt's notification and correction in 2006, but to the Committee's later denial of his administrative claim. Furthermore, the administrative record squarely contradicts any assertion that Verizon influenced Hewitt's correction of its administrative error. *See Pretty v. Prudential Ins. Co.*, --- F. Supp. 2d. ---, Civil No. 3:08-cv-60 (VLB), 2010 WL 814986, at *13 (D. Conn. Mar. 5, 2010) (plaintiff must identify "specific examples from the administrative record" showing that the conflict "may have impacted" the administrator's decision); *Rubino*, 2009 WL 910747, at *4-5 (same).

Most important is a series of internal correspondence confirming that Hewitt caught and corrected its own error. (Sandstrom Decl., Ex. J.) For example, the first record of anyone identifying the error is a July 18, 2006 e-mail from Jen Eberhart, a Hewitt employee:

> "We need to call back Lillian Varney's son and let him know that the [participant's] estate is not due a payment. While doing this calculation for CAMP it was determined that for the NYNEX plan the only beneficiary to get a payment would be a spouse that was married to the [participant] one year prior to their death. . . . If you could please have the [participant's] son called back and given this information."

(*Id.*, Ex. J at NYN10063-64.) Hewitt's recordkeeping "workflows" confirm that Hewitt identified its mistake while quality-checking plaintiff's potential benefit payment on July 18, 2006. (*Id.* Ex. J at NYN10200 (entry by Krystal Prideaux on July 18, 2006).) Subsequent e-mail

5

correspondence confirms Hewitt's internal decision that plaintiff's benefit eligibility notification was sent in error. A July 20, 2006 e-mail from Hewitt employee Charlotte Noonan states:

> Caroline and I just reviewed all the documents and we agree that the participant is not owed a benefit. The death benefit for a NYNEX [Management] participant who never earned an hour of service after 1/1/2002 is not payable if there is no spouse. Our current requirements are clear on this. They state under the Pre-January 1, 2002 termination: 'The non-spouse beneficiary benefit is only provided to those who terminationed [sic] after January 1, 2002."

(*Id.*, Ex, J at NYN10061.)

Plaintiff suggests erroneously that a later e-mail from Michael Thivierge, a non-attorney employee of Verizon's pension administration department, indicates that Verizon influenced Hewitt's correction. (Pl.'s Mem. at 3-4.) On January 23, 2007, six months *after* Hewitt notified plaintiff of its error and correction, Thivierge analyzed (at Hewitt's request) the terms of the NYNEX Plan to quality-check the accuracy of Hewitt's correction. (Pl.'s Mem, at HA104-05.) Thivierge reached the same conclusion that Hewitt had made six months before – "In the event of the participant's death, prior to normal retirement age, unfortunately, the Plan only provides for [Deferred Vested Pension] survivor benefits to the married spouse. No pension benefit is due to Ms. Varney's son."[1] (*Id.*) Plaintiff provides no explanation as to how Thivierge could have influenced a decision that Hewitt had made six months before, let alone as to how it would have been inappropriate for Hewitt to consult with a member of Verizon's pension administration department regarding the interpretation of a Verizon benefit plan.

In any event, plaintiff's structural conflict argument fails for an additional reason – any conflict of interest is, at most, *de minimis*, and does not support any inference that Verizon

---

[1] *See also* Sandstrom Decl., Ex. J at NYN10180 (Hewitt workflow: "Per Verizon, the only eligible person to be named pension beneficiary would've been a spouse. *This was confirmed last year by Krystal Prideaux on the [Hewitt] Manual Calc Team.* No further benefit due. Thank you.") (emphasis added).

influenced Hewitt's correction. The Supreme Court has emphasized that courts must weigh a structural conflict by its "degree of seriousness." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2351 (2008). Here, Verizon's conflict of interest approaches "the vanishing point." *Id.* The Verizon Plan has assets in excess of $16 billion, from which plaintiff seeks a one-time benefit payment of $99,269.74. (Sandstrom Decl., Ex. K.) Stated differently, plaintiff's claim seeks payment of 0.0006% of the Plan's total assets. Courts routinely dismiss allegations of structural conflict based on similarly small benefit claims. *See, e.g.*, *Romero v. SmithKline Beecham*, 309 F.3d 113, 118 (3d Cir. 2002) (Alito, J.) (affirming district court's "holding that the potential payout . . . was insufficient to establish a conflict of interest" because plaintiff failed to show that a payout of $50,000 created a conflict for a company with more than $12 billion in revenue); *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995) ("The impact on a company's welfare of granting or denying benefits under a plan will not be sufficiently significant as to threaten the administrators' partiality. . . . [Quaker] is a corporation which generates revenues of nearly $6 billion annually and is therefore not likely to flinch at paying out $240,000.").

## II.     Plaintiff Fails To Identify Any "Procedural Irregularity" to Support Discovery.

Plaintiff fares no better with his argument that "procedural irregularities" affected the Committee's denial of his benefit claims. (Pl.'s Mem. at 7-8.) He suggests that the Committee reversed its "initial decision" without "any new information," but this again mischaracterizes the procedural history of plaintiff's claims. The Committee did not reverse any benefit decision. The Verizon Claims Review Unit's initial decision was to deny plaintiff's claim and the Committee affirmed that decision after considering plaintiff's administrative appeal. (Sandstrom Decl., Ex. G & I.) Both the Committee's decision and the prior decision of the Claims Review Unit rested on the same ground – plaintiff was not eligible to receive a survivor benefit under the terms of the NYNEX Plan. (*Id.*)

Plaintiff's citation to *Harrison v. Prudential Insurance Co.*, 543 F. Supp. 2d 411 (E.D. Pa. 2008), confirms the shortcoming of his argument. The *Harrison* district court found a potential procedural irregularity where a medical insurer reversed a long-term disability benefit determination, and terminated the participant's benefits, "despite not receiving any new *medical* information" regarding the participant's disability. *Id.* at 421 (emphasis added). In other words, the insurer granted long-term disability benefits and then later terminated those benefits based on the same unchanged medical information. Unlike the claim in *Harrison*, plaintiff's claim rests entirely on the application of undisputed facts to the terms of the NYNEX Plan in effect when Ms. Varney terminated employment. The Committee, the Claims Review Unit, and Hewitt all agreed that the NYNEX Plan did not authorize payment of a survivor benefit to plaintiff.[2]

### III. Plaintiff's Challenge to the Merits of the Committee's Decision Does Not Support Discovery.

Plaintiff's final argument asserts that discovery is appropriate because, in his view, the Committee's decision was incorrect. (Pl.'s Mem. at 4-5, 8-9.) This, of course, puts the cart before the horse. The reasonableness of the Committee's decision is a matter for the Court to decide, under the arbitrary and capricious standard and based on the administrative record. "[A] plaintiff cannot satisfy the good cause requirement simply by arguing that the plan administrator acted in clear error." *Anderson*, 2004 WL 5402553, at *5. Indeed, plaintiff's own analysis confirms that his challenge to the Committee's decision rests entirely on a competing

---

[2] Plaintiff's further assertions that Verizon "failed to provide" a claim form and "refused to provide" an explanation for his benefit ineligibility misstate the facts of the case. Verizon twice provided plaintiff with a claim initiation form – first in July 2006 (*see* dkt. 1, ¶ 38) and again in September 2008 (*see* Sandstrom Decl., Ex. F). And the Committee and the Claims Review Unit both issued detailed decision letters explaining the basis for denying plaintiff's claims. (*Id.*, Exs. G & I.)

interpretation of the terms of the NYNEX Plan, and does not require any evidence from outside the administrative record. (Pl.'s Mem. at 4-5.)

## CONCLUSION

Plaintiff's benefit claims present the Court with a simple challenge to the Committee's exercise of its discretion to interpret the terms of the NYNEX Plan. Plaintiff suggests that the Committee's discretionary determination was affected by a conflict of interest and other procedural irregularities, but each of plaintiff's arguments "falls far short of satisfying the standard necessary for the court to order discovery outside the administrative record." *Rubino*, 2009 WL 910747, at *5. Accordingly, plaintiff's motion for extra-record discovery should be denied.

Respectfully submitted,

/s/ Frederick G. Sandstrom
Frederick G. Sandstrom (admitted *pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C.  20004-2401
202-662-6000
202-662-6291 (Facsimile)

March 26, 2010          *Attorney for Defendants*

9

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 26, 2010 a true and correct copy of this Opposition to Plaintiff's Request for Discovery Outside the Administrative Record was filed with the Court's CM/ECF system and served on counsel for plaintiff:

      Peter Romero, Esq.
      Frank & Associates, P.C.
      500 Bi-County Blvd., Suite 112N
      Farmingdale, NY  11735


                                     /s/ Frederick G. Sandstrom
                                     Frederick G. Sandstrom