UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD VARNEY, *individually and as
Administrator to the Estate of Lillian Varney,
deceased*

                              Plaintiff,

                - against -

NYNEX MANAGEMENT PENSION PLAN,
NYNEX, NYNEX INITIAL CLAIMS
COMMITTEE, NYNEX EMPLOYEE
BENEFITS COMMITTEE, VERIZON
COMMUNICATIONS, INC., VERIZON
EMPLOYEE BENEFITS COMMITTEE,
HEWITT ASSOCIATES COMP., LLC,
NYNEX MANAGEMENT GROUP LIFE
INSURANCE PLAN, NYNEX
SUPPLEMENTARY GROUP LIFE
INSURANCE PLAN,

                            Defendants.
------------------------------------------------------------X

**DECISION AND ORDER**

CV 07-695 (LDW) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Richard Varney ("Plaintiff") brings this action, individually and as the administrator of the estate of Plaintiff's mother, Lillian Varney, (the "Estate"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendants NYNEX Management Pension Plan (the "Pension Plan" or the "Plan"), NYNEX, NYNEX Initial Claims Committee, NYNEX Employee Benefits Committee, Verizon Communications, Inc., Verizon Employee Benefits Committee, NYNEX Management Group Life Insurance Plan, and NYNEX Supplementary Group Life Insurance Plan (the "Life Insurance Plan") (collectively, "Defendants" or "Verizon") seeking statutory penalties and benefits due

under the Pension Plan and the Life Insurance Plan, along with interest, costs, and and attorneys' fees.  Compl. [DE 1] at 12-13.[1]

The parties disagree about the procedural history of this case.  In 2007, Defendants filed a motion to dismiss based on, *inter alia*, Plaintiff's failure to exhaust his administrative remedies.  *See* DE 26.  Plaintiff claims that Defendants withdrew this motion "because of their inability to demonstrate that a claim form was provided to plaintiff."  Pl.'s Mem. [DE 38] at 3.  For their part, Defendants claim that while the motion was pending, Plaintiff "agreed to voluntarily withdraw his complaint and to submit his claims for administrative review."  Defs.' Mem. [DE 39] at 3.  A letter submitted by Plaintiff to the Court on September 12, 2008 [DE 28] states that the parties agreed "that Plaintiff's claim for benefits will be reviewed by Defendants' administrative committee, rendering the failure to exhaust remedies defense moot . . . ."  Without taking a position on which party's version of events is accurate, the Court notes that Plaintiff did indeed submit his claim to Defendants' administrative committee for review, during which time this case was stayed.  After the claim was denied, this case was returned to active status and the instant discovery dispute arose.

Before the Court currently is Plaintiff's motion regarding the appropriate scope of discovery.  As the Court explained to the parties at the January 20, 2010 Status Conference,

---

[1] Although Hewitt Associates, Comp., LLC ("Hewitt") is named as a Defendant in the Complaint, Hewitt has not filed an answer or otherwise moved with respect to the Complaint, no attorney has appeared on behalf of Hewitt, and in the instant motion, Plaintiff seeks to depose a representative of Hewitt, and refers to Hewitt as a non-party.  *See* Pl.'s Mem. at 7.  Moreover, at the January 20, 2010 Status Conference, Plaintiff's counsel advised the Court that he intended to file an Amended Complaint (and was directed to do so by March 10, 2010) in which Hewitt would not be named as a Defendant and the Court directed Plaintiff to do so by March 10, 2010.  *See* DE 33 ¶ 2.  That deadline was subsequently extended and the parties were directed to file a stipulation regarding the deadlines for filing the Amended Complaint and Amended Answer within ten (10) days of receiving a decision on this motion.  *See* DE 42.

where, as here, the plan document provides "discretionary authority" to the plan administrator, the standard of review is "arbitrary and capricious," and discovery is typically limited to the administrative record ("AR"). *See* DE 33 ¶¶ 3-4. Plaintiff contends that the circumstances of this case justify a departure from the standard limitation on discovery due to an alleged conflict of interest on the part of Defendants. Defendants maintain that there are no circumstances justifying such a departure. After reviewing the parties' submissions, hearing oral argument and considering the applicable case law, I am GRANTING the motion.

## II. THE PARTIES' CONTENTIONS

### A. Plaintiff's Contentions

Plaintiff asserts that discovery outside the administrative record is warranted here because there is evidence of a structural conflict of interest stemming from Verizon's dual roles as the plan sponsor and plan administrator. The evidence Plaintiff points to is an e-mail written by Verizon employee Michael J. Thivierege (the "Thivierege E-mail") to Hewitt advising Hewitt that no benefit was due Plaintiff.[2] Plaintiff also argues that Defendant's interpretation of the plan is "inconsistent with its plain words." Pl.'s Mem. at 3-5. Plaintiff further contends that evidence of procedural irregularities, including (1) Hewitt's reversal of the initial decision to award benefits even though it did not receive any new information about Ms. Varney or Plaintiff; (2) Defendants' shifting explanations for denial of the benefits; and (3) Defendants' failure to provide Plaintiff with a claim form (despite his request for such form) or any explanation for its decision to deny benefits, weigh in favor of allowing the requested discovery. *Id.* at 2-3, 7-9.

---

[2] Specifically, the Thivierege E-mail states: "In the event of the participant's death, prior to normal retirement age, unfortunately, the Plan only provides for DVP survivor benefits to the married spouse. No pension benefit is due to Ms. Varney's son." *See* Pl.'s Mem. at 3-4.

3

Plaintiff seeks leave to obtain the following limited discovery outside the administrative record:

> (1) the deposition of a representative of Hewitt regarding the basis for its initial determination of eligibility and later reversal of that determination;
>
> (2) the deposition of a corporate representative of Defendants pursuant to Federal Rule of Procedure 30(b)(6) regarding the denial of Plaintiff's benefits; and
>
> (3) the transcripts of certain telephonic communications between Plaintiff and Hewittt referred to in documents attached to Plaintiff's motion.

Pl.'s Mem. at 9. Plaintiff asserts that he is entitled to this discovery in order to ascertain the basis for Hewitt's determination that the Estate was entitled to receive the claimed benefit and the process by which the initial determination was reversed, as well as Verizon's role in the reversal decision. *Id*. at 3-4.

### B.     Defendants' Contentions

Defendants oppose the motion and argue that the structural conflict Plaintiff identified does not warrant the discovery Plaintiff seeks because a structural conflict, without more, does not satisfy the applicable "reasonable chance" of success requirement. Defs.' Mem. at 4. Furthermore, Defendants argue that any evidence showing that Defendants influenced Hewitt in its decision to deny Plaintiff's claim is irrelevant because this action is based on the Verizon Claims Review Committee's denial of Plaintiff's claim, not Hewitt's reversal. *Id.* at 5.

Defendants next argue that the administrative record contradicts Plaintiff's assertion that Verizon influenced Hewitt's decision. *Id.* at 5-6. In support of this argument, Defendants point to documents which they claim demonstrate that Hewitt caught its own mistake while quality checking Plaintiff's file in July 2006. *Id.* at 6. Regarding the Thivierge E-mail, Defendants

maintain that this communication was written six months after Hewitt notified Plaintiff of its error and correction, and therefore the e-mail is not indicative of any conflict of interest. They also assert that the analysis performed by Thivierge was done at Hewitt's request. *Id.* at 6-7.

According to the Defendants, the Plaintiff has failed to identify a procedural irregularity. Relying on case law from the Third and Seventh Circuits, Defendants assert that in light of the "small benefit claim[]" at issue here (i.e., Plaintiff's claim for $99,269.74 constitutes .0006% of the Plan's total assets of over $16 billion), the Court should find that the potential payout is insufficient to establish a conflict of interest. *Id*. at 7 (citing cases). Moreover, Defendants claim that Plaintiff is essentially arguing that discovery is appropriate here because the Verizon Claims Review Committee's decision was incorrect -- a matter that Defendants argue is not appropriate to consider at this point in the proceedings. *Id*. at 8.

Finally, in a footnote, Defendants dispute Plaintiff's assertion that Verizon did not provide a claim form and represent that they twice provided such form -- in July 2006 and in September 2008. *Id*. at 8 n.2; Decl. of Frederick G. Sandstrom in Supp. of Verizon's Opp'n to Pl.'s Req. for Discovery [DE 39-2] ("Sandstrom Decl."), Exh. F.

### III.   APPLICABLE LAW

#### A.   Standard of Review for ERISA Denial of Benefits Cases

Although a final determination of the standard of review is premature at this stage of the litigation, a discussion of the applicable standard is instructive in establishing the appropriate scope of discovery. *See Allison v. Unum Life Ins. Co.*, CV 04-0025, 2005 WL 1457636, at *3 (E.D.N.Y. Feb. 11, 2005); *Trussel v. CIGNA Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 389-90 (S.D.N.Y. 2008) (citations omitted).

The parties agree that the Pension Plan at issue here provides the administrator with discretionary authority. *See* DE 34; Pl.'s Mem. at 6; Defs.' Mem. at 3.[3] Where the plan document provides "discretionary authority" to the plan administrator, the administrator's decision is entitled to deference and the standard of review is "arbitrary and capricious," as opposed to the otherwise applicable *de novo* standard of review. *Garg v. Winterthur Life*, 573 F. Supp. 2d 763, 769-70 (E.D.N.Y. 2008). A plan administrator who both evaluates and pays benefits claims has a conflict of interest that courts must evaluate in determining whether there was an abuse of discretion under the arbitrary and capricious standard. However, the mere existence of a conflict does not make *de novo* review appropriate. *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 82-83 (2d Cir. 2009).

The decision to consider evidence outside the administrative record is "one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause." *Garg*, 573 F. Supp. 2d at 770-71 (quoting *DeFelice v. Amer. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66 (2d Cir. 1997)). Specifically, a district court may consider evidence outside the administrative record to determine issues of plan interpretation or to resolve factual disputes upon a showing of "good cause." *See Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 294-95 (2d Cir. 2004). "Good cause" may be established by a showing that "the administrator was not disinterested." *Id.* at 294. However, under the law applied in the Second Circuit, it is well established that a conflict of interest does not per se constitute "good

---

[3] Plaintiff refers to the administrator as the "Verizon Benefits Committee," while Defendants refer to the administrator as the "Verizon Claims Review Committee." Neither of these committees are named Defendants. For purposes of this motion, it is sufficient that the parties agree that the administrator has discretionary authority.

6

cause." *See id*. at 294-96 (clarifying holding in *DeFelice*, 112 F.3d at 66) ("We hold that a conflicted administrator does not per se constitute good cause, and caution district courts that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause.") (emphasis in original); *Rubino v. Aetna Life Ins. Co.*, No. CV 07-377, 2009 WL 910747, at *3 (E.D.N.Y. Mar. 31, 2009) ("The Second Circuit has made clear that a *per se* rule would effectively eliminate the good cause requirement and the discretion afforded to district courts in deciding whether to admit additional evidence, because claims reviewers and payors are almost always either the same entity or financially connected in some other way.") (internal quotation marks and citation omitted). Thus, a party asking the court to consider discovery outside the administrative record must allege more than a mere conflict of interest. *See*, *e.g.*, *Locher*, 389 F. 3d at 295 (finding that something more, such as flawed procedures in arriving at the claim determination, is required to give rise to a finding of good cause).

**B.     Standard to Determine Whether to Allow Additional Discovery**

Significantly, "the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence." *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 229 (E.D.N.Y. 2008) (quoting *Allison*, 2005 WL 1457636, at * 11); *Ramsteck v. Aetna Life Ins. Co.*, No. 08-CV-0012, 2009 WL 1796999, at *8, n.3 (E.D.N.Y. Jun. 24, 2009) ("[T]he standard for permitting discovery to supplement the administrative record in an ERISA case is far less stringent than the standard for actually considering that outside evidence when reviewing the decision of the Plan Administrator, under either the *de novo* or the 'arbitrary and capricious' standard") (citation omitted). "If discovery is allowed, the plaintiff can then apply to the district judge for a determination as to whether she will expand the record to

7

include information that discovery yielded, the nature of which is not yet known." *Burgio*, 253 F.R.D. at 229 (internal quotations and citation omitted).

Where, as here, evidence outside of the administrative record is sought at the discovery stage, the petitioner "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Rubino*, 2009 WL 910747, at *4 (quoting *Trussel*, 552 F. Supp. 2d at 390 (internal quotation marks and citations omitted)); *Burgio*, 253 F.R.D. at 230-31 (collecting cases). As noted by this Court in an earlier decision, "[i]f a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery." *Rubino*, 2009 WL 910747, at *4 (quoting *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180 (S.D.N.Y. May 31, 2005). "The good cause standard required to obtain evidence beyond the administrative record [through discovery] is therefore less stringent than when requesting that the court [ ] consider such evidence in its final determination." *Burgio*, 253 F.R.D. at 230 (quoting *Trussel*, 552 F. Supp. 2d at 390-91) (alterations in original). For example, in *Burgio v. Prudential Life Insurance Company of America*, 253 F.R.D. 219, 231 (E.D.N.Y. 2008), this Court found that there was "enough evidence raised by Plaintiff of a potential conflict of interest to warrant limited discovery outside the administrative record" where Plaintiff demonstrated that "Defendant may have operated under a conflict of interest in that [Plaintiff's] eligibility for LTD benefits was allegedly tied to his continued eligibility for other employee benefits such as life insurance." Similarly, in *Samedy v. First Unum Life Insurance Company of America*, No. 05-CV-1431, 2006 WL 624889, at *2 (E.D.N.Y. Mar. 10, 2006), another court in this district

8

granted limited discovery to assist in determining whether there was a conflict of interest because the defendant was both the insurer and the claim administrator and the plaintiff had provided a declaration from a former employee who indicated that defendant placed pressure on its employees to deny claims.

B.  Application

The fact that Verizon is both the plan administrator and plan sponsor is not alone sufficient to warrant discovery outside the administrative record.  Plaintiff, however, has pointed to several procedural irregularities that, when considered in conjunction with Verizon's conflict of interest, support the assertion that Plaintiff has a reasonable chance of success in meeting the good cause standard that must be met for a court to look beyond the administrative record.  Thus, some limited discovery outside the scope of the record is warranted here.

First, Plaintiff points to Hewitt's unexplained reversal of its initial decision that Plaintiff was eligible for benefits.  In *Mergel v. Prudential Life Insurance Co. of America*, No. 09 CV 00039, 2009 WL 2849084, at *2 (S.D.N.Y. Sept. 1, 2009), the court allowed discovery where the plaintiff's claim file contained acknowledgments by the defendant that the plaintiff was probably unlikely to return to work (and presumably therefore entitled to benefits), an opinion that changed after the Plaintiff's Social Security benefits were canceled and the payment of his claim became more expensive.  The fact that Defendants here cannot explain why Hewitt – who was hired by Verizon to make these types of decisions and presumably knowledgeable about the Plan's eligibility requirements – changed its mind after initially finding Plaintiff eligible for

9

benefits raises a question about the processes employed here.[4]

Plaintiff also argues that the Theivierege E-mail, described above, suggests that Verizon may have improperly pressured Hewitt to reverse its decision regarding Plaintiff's claim. Defendants are correct that in light of the Thivierege E-mail being written six months after Hewitt's reversal, it is impossible to conclude that the e-mail itself influenced Hewitt's decision to deny the claim. The e-mail, nevertheless, raises an issue concerning the relationship between Hewitt and Verizon, such as whether Verizon previously pressured Hewitt to deny the claims. The Court makes no finding with regard to that issue at this juncture, but instead finds that discovery concerning the relationship between Verizon and Hewitt with respect to Plaintiff's claim is appropriate. *See Garban v. Cigna Life Ins. Co. of N.Y.*, No. 10 Civ. 5770, 2011 WL 3586070 (S.D.N.Y. Aug. 11, 2011) (permitting discovery into the defendants' relationships with third-party vendors).

Verizon argues that internal Hewitt correspondence and "workflows" demonstrate that Hewitt caught its own error without interference from Thivierege or anyone else at Verizon, *see* Defs.' Mem. at 5-6 (citing Sandstrom Decl., Exh. J). However, without discovery, Plaintiff has no way of knowing whether Verizon prompted Hewitt to catch this "error" in the first place. *See Burgio,* 253 F.R.D. at 231-32 (allowing discovery where record raised questions as to the

---

[4] Defendants argue that this case is distinguishable from *Harrison v. Prudential Insurance Co.*, 543 F. Supp. 2d 411 (E.D. Pa. 2008) where the court reversed a denial of benefits due in part to the procedural anomaly of the plan administrator's reversal of its initial decision to award benefits despite not receiving new medical information. Defendants argue that the holding of *Harrison* is inapplicable here because this case merely involves the application of undisputed facts to the Plan. While this may be true, it does not follow that Hewitt's reversal of its decision is not a procedural anomaly. *Harrison* did not purport to catalog the entire range of actions that could be considered procedural anomalies and, in fact, did not even involve the less than stringent "reasonable chance" standard for permitting discovery.

defendant's influence on third-party decision makers).[5]

Another procedural irregularity Plaintiff identifies is Verizon's refusal to provide him with a claim form when he requested one in 2006. Defendants dispute the veracity of this assertion in a footnote. *See* Defs.' Mem. at 8, n.2. In support of their argument that they mailed the claim form in July 2006, Defendants cite paragraph 38 of the Complaint. However, that paragraph avers that "Plaintiff never received the form." Defendants also state that they provided Plaintiff another claim form in September 2008. Without deciding whether Defendants actually sent a form in July 2006 or whether, if they did not, the form sent in September 2008 cures that deficiency, the Court finds that Plaintiff has raised the possibility that there was an irregularity in the claim review process which, when combined with the other factors discussed above, warrants further limited discovery. *See Knopick v. Metro. Life Ins. Co.*, 745 F. Supp. 2d 72, 85-86 (N.D.N.Y. 2010) (holding that flawed review process satisfied good cause standard expanding review beyond the administrative record).

Having concluded that Plaintiff has demonstrated his entitlement to discovery outside the administrative record, I now address Defendants' remaining arguments. First, Defendants contend that the structural conflict Plaintiff identified does not warrant the discovery he seeks because a structural conflict, without more, does not satisfy the applicable "reasonable chance"

---

[5] The Court also notes that this documentation is not as clear as Defendants maintain and may also suggest Hewitt's lingering uncertainty about whether a benefit was due. For example, after the error was "caught," one of the Hewitt employees continued to believe that "the estate is due a benefit," while another employee stated that the case "seems like it could go either way." Sandstrom Decl., Exh. J at NYN10061-62. Moreover, the "workflow" Defendants cite states that: "Per Verizon, the only eligible person to be named pension beneficiary would've been a spouse." *Id.* at NYN10180. This statement does not reflect that Hewitt independently caught its own error. Likewise, the statement is not inconsistent with Plaintiff's theory that Hewitt only changed its mind after being contacted by Verizon.

of success requirement. Defs.' Mem. at 4 (citing *Lochner,* 389 F. 3d at 296, *Yasinoski v. Conn. Genn. Life Ins. Co.,* No. CV 07-2573, 2009 WL 3254929, at *11 (E.D.N.Y. Sept. 30, 2009) and *Rubino*, 2009 WL 910747, at *3). This argument is unpersuasive. The cited portions of *Lochner* and *Rubino* address the standard for determining whether to admit evidence outside the administrative record, not whether discovery of such evidence is permissible. As has been noted by several courts, the standard for permitting discovery is far less stringent than the standard for admissibility. *See, e.g., Laakso v. Xerox Corp.*, No. 08-CV-6376, 2011 WL 3360033, at *3 (W.D.N.Y. Aug. 3, 2011); *Ramsteck v. Aetna Life Ins. Co.*, No. 08-CV-0012, 2009 WL 179699, at *8 n.3 (E.D.N.Y. June 24, 2009). Moreover, *Yasinoski* is distinguishable on its facts because unlike that case, Plaintiff here goes beyond merely pointing to Verizon's position as the plan sponsor and administrator to justify the discovery he seeks.

Defendants next argue that evidence of Defendants' influence on Hewitt's decision to reverse its initial granting of Plaintiff's claim is irrelevant because Plaintiff's claim is based on Verizon's ultimate denial of his claim, not on Hewitt's decisions in 2006. Defs.' Mem. at 5. Hewitt's initial decision approving Plaintiff's claim, however, is probative of whether the claim was valid, regardless of the fact that Hewitt was not the ultimate decision maker. *Puri v. Hartford Life and Accident Ins. Co.*, __F. Supp. 2d __, No. 10-cv-00118, 2011 WL 1835852, at *2 n.2 (D. Conn. May 12, 2011) (holding that deposition of employee was relevant even though she was not the decision maker where decision maker relied on her determination). For this same reason, the Court rejects Defendants' argument that there was no procedural irregularity because the Verizon Claims Review Committee itself never reversed any decision. *See* Defs.' Mem. at 7. Although Hewitt was not the ultimate decision maker, its interpretation of Plaintiff's eligibility is

relevant because Hewitt was presumably well versed in the Plan's eligibility requirements.

Defendants also argue that Plaintiff can never succeed in demonstrating that a structural conflict exits because any "conflict of interest is, at most, *de minimis*." Defs.' Mem. at 6-7. Defendants go on to explain that Plaintiff only seeks .0006% of the Plan's total assets and argue that courts "routinely dismiss allegations of structural conflict based on similarly small benefit claims." *Id.* at 7 (citing *Romero v. SmithKline Beecham*, 309 F.3d 113, 118 (3d Cir. 2002); *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir. 1995)). It is unclear whether Defendants are arguing that the magnitude of the conflict of interest or the size of the claim is *de minimis*. In any event, the cases Defendants cite in support of this argument are inapposite. First, *Romero* and *Chalmers* are not Second Circuit decisions and are not binding on this Court. Even if they were, they are decisions affirming a district court's determination on the merits of the case and do not apply the more lenient standard applicable to the scope of discovery. Moreover, neither case stands for the proposition that there can never be a conflict of interest when a claim is small. Rather, the plaintiffs in those cases argued that the amount of the claim (*Romero*) or the fact that the plan was unfunded (*Chalmers*) created a conflict of interest and the court rejected these arguments because the amounts sought were not very large in relation to the size of the plan. Plaintiff here does not put forth any arguments about the size of his claim or Defendants' ability to fund it.

Finally, Defendants state that Plaintiff is "putting the cart before the horse" by arguing that discovery is warranted because Verizon misinterpreted the Plan. Defs.' Mem. at 8-9. In reaching a decision in this case, the Court has not considered Plaintiff's argument that Verizon "interpreted the plan in a manner inconsistent with its plain words." *See* Pl.'s Mem. at 5.

13

This Order concerning the scope of discovery should not be construed as a decision on whether Plaintiff has demonstrated good cause such that the Court should admit evidence outside the administrative record. Furthermore, the discovery allowed will be permitted solely for the purpose of determining whether Verizon operated under a conflict of interest and whether that conflict affected the reasonableness of its decision to deny Plaintiff benefits. Plaintiff's motion is therefore GRANTED to the following extent: (1) Plaintiff may conduct the deposition of a representative of Hewitt with knowledge regarding the basis upon which Hewitt made its initial determination of eligibility and the process behind its decision to reverse the initial determination; this deposition may not exceed two hours in length; (2) Plaintiff may conduct a Rule 30(b)(6) deposition of a knowledgeable representative of the Defendants directed to the denial of benefits to the Plaintiff; this deposition also may not exceed two hours in length; and (3) to the extent that any tapes are extant with regard to the telephonic commmunications between the Plaintiff and Hewitt (as referenced in HA 0001-HA0003), Defendants are to produce identical duplicate copies of those tapes; I am not requiring Defendants to provide transcripts of those communications unless such transcripts already exist – Defendants are to confirm this fact one way or the other to Plaintiff's counsel promptly. *See Garban*, 2011 WL 3586070, at *3 (allowing depositions of IMEs; depositions of representatives of defendants; and document production concerning the relationship between defendant and third-parties).[6]

Counsel for the parties are to cooperate in scheduling the depositions and making the

---

[6] Elsewhere in the Memorandum, Plaintiff states that he seeks discovery from Hewitt regarding what steps Defendants took to "'wall off'" the benefits decisions from Verizon employees." *See* Pl.s' Mem. at 7. To the extent that this is a request for discovery in addition to the discovery requests mentioned above, the request is denied as Plaintiff has not made a showing of relevancy for the general policies of Verizon with respect to Hewitt.

witnesses available. These limited depositions must be concluded by January 25, 2012.

Judge Wexler's Chambers has further directed that a summary judgment briefing schedule be included as part of this Order. The parties are directed to consult Judge Wexler's Individual Practice Rules regarding dispositive motions. The briefing schedule will proceed as follows:

- Moving party's motion papers, Rule 56.1 Statement and memorandum of law must be served by February 29, 2012;

- Opposition papers including Rule 56.1 Counterstatement and memorandum of law must be served by March 29, 2012;

- Reply papers, if any, to be served by April 11, 2012.

The proposed Joint Pre-Trial Order is to be filed on ECF by April 26, 2012 and the Pre-Trial Conference will be held on April 30, 2012 at 11 a.m.

**SO ORDERED.**

Dated: Central Islip, New York
December 30, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge