UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RICHARD VARNEY, JR. individually and as
Administrator to the Estate of Lillian Varney,      Civil Case No.: 07-695 (LDW) (AKT)
Deceased

                       Plaintiff,

    -against-                                      **PLAINTIFF'S STATEMENT**
                                                    **OF MATERIAL FACTS**
VERIZON COMMUNICATIONS, INC.,                       **PURSUANT TO RULE 56.1**
VERIZON MANAGEMENT PENSION PLAN
and VERIZON EMPLOYEE BENEFITS
COMMITTEE,

                    Defendants.
----------------------------------------------------------------x

      Plaintiff Richard Varney, Jr., by and through his attorneys Frank & Associates, P.C., respectfully submits the following Statement of Material Facts pursuant to Rule 56.1:

      1.    Defendant VERIZON COMMUNICATIONS, INC ("VERIZON") is a Delaware corporation doing business throughout New York State with a principal place of business at 140 West Street, New York, New York 10007. (Def. Answer to Amended Compl.).

      2.    VERIZON COMMUNICATIONS INC., formerly known as Bell Atlantic Corp., changed its name to Verizon following Bell Atlantic's acquisition of GTE Corp. in 2000. (Def. Answer to Amended Compl.).

      3.    The VERIZON MANAGEMENT PENSION PLAN (the "Plan") is an employee pension plan subject to the requirements of the Employee Retirement Income Security Act of 1974, codified at 29 U.S.C.A. §1001 et seq. ("ERISA). (Def. Answer to Amended Compl.).

      4.    The Plan is a defined benefit pension plan covering Verizon's non-union employees. The Plan is an "employee benefit plan" within the meaning of ERISA §3(2)(A) and

more precisely a "defined benefit plan" within the meaning of ERISA §3(35). (Def. Answer to Amended Compl.).

5. The Plan is a successor to the Bell Atlantic Cash Balance Plan and the NYNEX Cash Balance Plan. These predecessor plans also were at all relevant times "employee pension benefit plans," and more specifically "defined benefit plans," within the meaning of ERISA §3(2)(A) and ERISA §3(35). (Def. Answer to Amended Compl.).

6. Defendant, VERIZON is a successor "employer" within the meaning of 29 U.S.C. §1002(5) and "successor plan sponsor" of the NYNEX MANAGEMENT PENSION PLAN. (Def. Answer to Amended Compl.).

7. NYNEX merged into Bell Atlantic Corp., thus, employees of NYNEX and Bell Atlantic are covered by the Plan. (Def. Answer to Amended Compl.).

8. Defendant, VERIZON is an "employer" within the meaning of 29 U.S.C. §1002(5) and plan "sponsor" of the Plan. (Def. Answer to Amended Compl.).

9. The VERIZON EMPLOYEE BENEFITS COMMITTEE (the "Committee") is the Plan's administrator within the meaning of ERISA §3(16)(A). (Def. Answer to Amended Compl.).

10. The Plan confers discretionary authority on the Verizon Benefits Committee. (See Document 52, Def. Opp. To Plaintiff's Motion for Discovery at 3). The administrator of the Plan has been given both the discretionary authority to determine the validity of the participant's claim and pay the benefits under the plan.

11. At all times relevant to the Complaint, Verizon had a contractual relationship with Aon Hewitt to provide administrative services and customer support for Verizon's benefits plan participants. (Storms Dep. p. 13).

12. Plaintiff RICHARD VARNEY, JR. is the son of Lillian Varney, deceased. (Varney Decl. ¶1).

13. Lillian Varney was a former employee of NYNEX and its successor, VERIZON, from 1980 to December 1993 and a participant in the Plan. (Varney Decl. ¶2).

14. Lillian Varney was a "participant" under the NYNEX MANAGEMENT PENSION PLAN within the meaning of 29 U.S.C. §1002(7). (Varney Decl. ¶2).

15. Plaintiff RICHARD VARNEY, JR. is a "beneficiary" within the meaning of 29 U.S.C. §1002(8). (Varney Decl. ¶3).

16. Plaintiff RICHARD VARNEY, JR. is the sole beneficiary of the Estate of Lillian Varney. (Varney Decl. ¶3).

17. Plaintiff RICHARD VARNEY, JR. is the Administrator of the Estate of Lillian Varney. (Varney Decl. ¶3).

18. Lillian Varney was on permanent disability from on or about January 1, 1994, until she died on January 10, 2006. (Varney Decl. ¶4).

19. Philip Leslie Storms is the Director of Benefits for Verizon Communications, a position he has held since approximately 2006. (Storms Dep. p. 7) (the relevant pages of transcript of the Storms Depositions are annexed as Exhibit A). Storms is responsible for the administration of the Verizon pension plans. (Storms Dep. p. 8). Storms has been a member of the Verizon Claims Review Committee since April 2006. (Storms Dep. p. 36).

20. Storms testified that the claims process is initiated when a participant or beneficiary contacts the Verizon Benefits Center to inquire about a benefit. (Storms Dep. p. 12). A VBC representative then reviews the records of the participant and the applicable provisions of the plan and informs the participant or beneficiary whether a benefit is due. (Storms Dep. p. 12).

3

The representatives are trained about Verizon's plans, have access to information about the participant and the plan in which the participant participates, and have information outlining the provisions of the plan as they apply to eligible beneficiaries. (Storms Dep. p. 14).

21. If the VBC representative determines that a benefit is due, the participant or beneficiary is mailed material explaining elections that need to be made in connection with the benefit and asking the participant or beneficiary to provide information as to how the payment should be delivered. (Storms Dep. p. 13).

22. If the VBC determines that no benefit is due and the participant or beneficiary disagrees with that determination, the participant or beneficiary may file a claim to be reviewed by the Verizon Claims Review Unit. (Storms Dep. p. 12). The Claims Review Unit then evaluates the claims reviewing all of the administrative records of the company to determine the facts of the individual's employment, compensation, all facts that might impact a determination of the claim, and all of the plan language that applies to the determination of the claim. The Claims Review Unit then makes a determination of the claim. (Storms Dep. p. 10).

23. After the initial determination is made the Claims Review Unit issues a claim determination letter explaining the plan provisions upon which the determination was based and whether the claim had been approved or denied. (Storms Dep. 10-11).

24. On or about January 17, 2006, Plaintiff contacted the Verizon Benefits Center and advised that Lillian Varney had deceased on January 10, 2006, and that he desired to make a claim for benefits under the Plan. (Varney Decl. ¶5).

25. The Verizon Benefits Center advised Plaintiff that no information would be provided to him until he provided Letters Testamentary identifying him as the administrator of Lillian Varney's estate. (EXHIBIT B); (Varney Decl. ¶6).

26. On or about March 27, 2006, the Superior Court of Orange County California appointed Richard Varney Jr. as Administrator of the Estate of Lillian Varney. (Varney Decl. ¶7).

27. On or about April 18, 2006, Plaintiff provided the Letters Testamentary to the Verizon Benefits Center. (EXHIBIT C); (Varney Decl. ¶8).

28. Defendants received the estate paperwork and determined that Lillian Varney was entitled to have a benefit payable to her Estate. (EXHIBIT D).

29. In or about late May, 2006, the Verizon Benefits Center notified Plaintiff that the calculation of his benefits under the Plan had been completed. (Varney Decl. ¶9).

30. The VBC determined that Richard Varney was entitled to a benefit under the plan and mailed Plaintiff a Beneficiary Notice of Rights and Pension Plan Beneficiary Pension Elections Worksheet, dated May 23, 2006. (EXHIBIT E); (Varney Decl. ¶10). The document stated that it was determined that Plaintiff was entitled to a death benefit in the amount of $99,269.74. (EXHIBIT E); (Varney Decl. ¶10).

31. On or about June 15, 2006, Plaintiff received a letter from the Verizon Benefits Center confirming that he was entitled to receive a benefit in the amount of $99,269.74 under the Plan. (Varney Decl. ¶11). The VBC subsequently mailed Plaintiff a Pension Plan Beneficiary Pension Election Authorization Form, dated June 20, 2006. (EXHIBIT F) (Varney Decl. ¶11).

32. On or about June 22, 2006, Plaintiff contacted the Verizon Benefits Center by telephone to inquire when he would receive the check for his benefits. (Varney Decl. ¶12). Without explanation, the Verizon Benefits Center advised Plaintiff payment would be delayed until August 1, 2006. (Varney Decl. ¶12).

33. On or about July 18, 2006, Plaintiff contacted the Verizon Benefits Center again by telephone and was informed that there was "a problem" and that he would be contacted within 24 hours. (Varney Decl. ¶13). Plaintiff never received a return telephone call from the Verizon Benefits Center. (Varney Decl. ¶13).

34. Despite numerous telephone conversations with representatives at the Verizon Benefits Center during July, 2006, Defendants failed to provide Plaintiff with formal notification of the denial of his claim or any explanation regarding why his benefit had not been paid. (EXHIBIT G) (Varney Decl. ¶14) .

35. Defendants failed to identify or explain to Plaintiff the plan provisions upon which the determination that Plaintiff was not due a benefit was based and whether the claim had been approved or denied. (Varney Decl. ¶15).

36. Defendants failed to provide Plaintiff with a claim form to initiate a review of the determination that he was not entitled to a benefit or to challenge the denial of benefits. (Varney Decl. ¶16).

37. On or about July 20, 2006, the Verizon Claims Center contacted Plaintiff by telephone and advised Plaintiff that it was unable confirm the reason why the pension proceeds had not been paid. (Varney Decl. ¶17). Representatives informed Plaintiff that he would have to file a request claim form. (EXHIBIT H) (Varney Decl. ¶17).

38. On or about July 30, 2006 Plaintiff contacted the Verizon Benefits Center and requested that a claim form be sent to him. (Varney Decl. ¶18). Defendants failed to provide Plaintiff with a claim form until after this action was commenced. (Varney Decl. ¶18).

39. On or about August 30, 2006, Plaintiff, through his attorneys sent a request in writing to the Plan administrator for relevant plan documents pursuant to ERISA 29 U.S.C.

§1132. (EXHIBIT I). Defendants failed to provide Plaintiff's counsel with current Plan documents or timely respond to Plaintiff's request.

40. From August 2006 to December 2006, Plaintiff repeatedly asked Defendants to provide a written denial of benefits. (EXHIBIT I) (Varney Decl. ¶19).

41. From August 2006 to December 2006, Defendants failed to provide Plaintiff with a written denial of benefits. (Varney Decl. ¶20).

42. Defendants failed to provide Plaintiff a written denial of benefits until after the commencement of this action. (Varney Decl. ¶21).

43. Defendants reversed their initial decision to award benefits, despite the fact that the administrator did not receive any new information about Lillian Varney or Plaintiff. Defendants advised Plaintiff that the determination had been reversed in a telephone call, but did not provide Plaintiff with any written explanation regarding the denial of benefits or a claim form to challenge the adverse determination and initiate a review. (Varney Decl. ¶22). Defendants did not identify which provisions of the plan, if any, they relied upon in denying Plaintiff's claim. (Varney Decl. ¶22).

44. On February 16, 2007, Plaintiff commenced this action to enforce his rights under the Plan pursuant to ERISA. (Varney Decl. ¶23).

45. Defendants filed a Rule 12(b)(6) motion to dismiss based on Plaintiff's purported failure to exhaust administrative remedies under the Plan. (Doc. No. 26). Defendants had to withdraw the motion to dismiss because there was no evidence that they ever provided Plaintiff with a claim form.

46. On November 19, 2008, Plaintiff submitted his claim for administrative review to the Verizon Claims Review Unit, which received the claim on November 24, 2008. (EXHIBIT J).

47. Defendants denied Plaintiff's claim in a determination dated February 20, 2009. Defendants failed to provide Plaintiff any explanation regarding the denial of his claim prior to February 20, 2009. (EXHIBIT K).

48. On or about July 3, 2009, Plaintiff appealed the determination to the Verizon Claims Review Committee. (EXHIBIT L).

49. On or about September 17, 2009, Defendants issued a determination denying Plaintiff's appeal. (EXHIBIT M).

50. Section 5 of the June 17, 1993, NYNEX Management Pension Plan provides in pertinent part:

**Death After Termination of Employment.**

**Except as provided in Paragraph 3, a Death Benefit shall not be payable in the case of any person who dies after he has ceased to be an employee of a Participating Company, unless such person became disabled by reason of accident or sickness while an employee and continued disabled, until death, to such a degree as to be unable to engage in any gainful occupation. In such cases a Death Benefit may be paid …**

(EXHIBIT N).

51. Lillian Varney became disabled by reason of sickness while an employee and continued disabled, until her death, to such a degree as to be unable to engage in any gainful occupation.

52. Lillian Varney, was an employee of NYNEX and its successor, VERIZON, from 1980 to December 1993, and she was on permanent disability from on or about January 1, 1994, until she died on January 10, 2006.

8

### The Relevant Provisions of the Plan

53. In determining whether Richard Varney was entitled to a benefit, Verizon relied on the NYNEX Management Pension Plan, which was amended June 17, 1993, and in particular, Section 5, which is entitled Death Benefits. (Storms Dep. 18).

54. Section 5 of the Plan entitled "Death Benefits" provides for certain death benefits. Section 5.1 provides for an "Accident Death Benefit;" Section 5.2 provides for a "Sickness Death Benefit;" Section 5.3 provides for a "Pension Death Benefit." (EXHIBIT N).

55. Section 5.4 is entitled "Eligible Beneficiaries," and limits the "persons who may be beneficiaries of the Accident or Sickness Death Benefit or of payments on the death of a pensioner"... "to the spouse and the dependent children and other dependent relatives of the deceased." (EXHIBIT N).

56. The limitation on eligible beneficiaries in Section 5.4, by its own terms, applies only the Accident, Sickness and Pension Death Benefits described in the paragraphs that precede 5.4. (EXHIBIT N).

57. The limitation in Section 5.4 makes no reference to a benefit for "Death After Termination of Employment." (EXHIBIT N).

58. Section 5.5 is entitled "Method of Payment" and discusses payments on death of an employee or pensioner, payment on death of a beneficiary, advance payment and payment of interest. (EXHIBIT N).

59. Section 5.6 is entitled "Death After Termination of Employment" and provides that a death benefit shall be payable in the case of a person who dies after she has ceased to be an employee of a participating company, if she became disabled by reason of sickness while and

employee and continued disabled, until death, to such a degree as to be unable to engage in any gainful occupation. (EXHIBIT N).

60. Section 5.6 does not include any language limiting who may be an eligible beneficiary of the Death After Termination of Employment Benefit. (EXHIBIT N).

61. Defendants denied Plaintiff's appeal and claimed that the benefit provided in Section 5.6 is subject to the same limitation on eligible beneficiaries described in Section 5.4. (EXHIBIT M). However, as previously noted, Section 5.4 refers only to the Accident, Sickness and Pensioner Death Benefit, and makes no reference, whatsoever, to the Death After Termination of Employment Benefit contained in Section 5.6. (EXHIBIT N).

62. Section 1 of the June 17, 1993, NYNEX Plan provides in pertinent part:

(b) **Deferred Vested Pension**.

(i) **...any participant as defined in Paragraph 1e of this Section 4 who has one hour of service on or after January 1, 1987, and who has completed five or more years of service...during the period beginning with the calendar year in which the participant attained the age referred to Section 203(b)(1)(A) of the Pension Act, namely age twenty-two, or, in the case of participant who has one hour service on or after January 1, 1985, age eighteen...and who is not eligible for a service pension under Paragraph 1(a) of this Section 4...shall be eligible for a pension...**

63. Lillian Varney had at least one hour of service after January 1, 1987, and completed five or more years of service during the applicable periods.

64. Defendants' Management Rules Manual provides in pertinent part:

**1985 Death Benefit**

**Certain participants will be eligible for coverage under a form of lump sum death benefit which was formerly known, under the NYNEX Plan, as the Sickness Death Benefit, and which was limited to certain employees who were in active service as of July 1, 1985...**

**1991 Death Benefit**

**Certain Participants will be eligible for coverage under a form of lump sum death benefit which was formerly known, under BAMPP or BAERP, as the Sickness Death**

10

**Benefit, and which was limited, by plan amendment, to certain employees who were in active service as of April 1, 1991, and which was limited to the amount of the benefit determined as of December 31, 1991…**

65. Lillian Varney was an employee who was in active service as of July 1, 1985, and as of April 1, 1991. (EXHIBIT M).

66. Defendants offered Plaintiff no explanation or reason for denying his benefits claim prior to the commencement of this action. (Varney Decl. ¶22).

67. Defendants contend that the Claims Center was mistaken in its belief that Plaintiff was due a benefit, but provided Plaintiff with no explanation as to the basis for the alleged mistake, or how and why it was discovered, prior to the commencement of this action.

68. The Verizon Claims Center had determined that Plaintiff was entitled to a Preretirement Survivor Annuity, which is payable to a designated beneficiary and, if none is designated, then the participant's estate:

> **If the participant is not married on the Date of Death, the death benefit will be payable to the participant's designated beneficiary or beneficiaries, or, if none has been designated, the benefit will be payable to the participant's estate.**

(EXHIBIT O; P).

69. The Verizon Benefits Operations Team explained that this meant the current plan rules determined whether Plaintiff was an eligible beneficiary and questioned "what evidence did we have not to pay [the benefit]?" (EXHIBIT P).

70. After the commencement of this action, Defendants contended that this benefit was not available under the terms of the plan in effect at the time of Lillian Varney's separation from employment and appeared in a later plan, after Mrs. Varney was terminated, but before she died. (EXHIBIT M). However, the VBC Management Requirements provide:

**Payments may commence based on prior commencement rules unless the current plan provides for more liberal treatment of this group.**

(EXHIBIT P). The administrative file reflects that although the benefit is to be calculated under the NYNEX rules, the beneficiary designation falls under the current plan rules. (EXHIBIT P).

71. While the VBC continued to believe that "the estate is due a benefit," Verizon pressured the VBC to reverse its initial determination. The administrative file contains the Claim Center's "workflow," which states that: "*Per Verizon*, the only eligible person to be named pension beneficiary would've been a spouse." An attorney at Verizon, Michael J. Thivierge, Esq., sent an email to the Verizon Claims Center stating that it was his opinion that, "In the event of the participant's death, prior to normal retirement age, unfortunately, the Plan only provides for DVP survivor benefits to the married spouse. *No pension benefit is due to Ms. Varney's son.*" (EXHIBIT Q).

Dated: Farmingdale, New York
       March 21, 2012

                                            **FRANK & ASSOCIATES, P.C.**
                                            *Attorneys for Plaintiffs*

By: _____
Peter A. Romero (PR-1658)
500 Bi-County Blvd., 112N
Farmingdale, New York 11735
Tel. (631) 756-0400
Fax (631) 756-0547