UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| RICHARD VARNEY, | : | |
| | : | |
| Plaintiff, | : | Case No. 07-CV-695(LDW)(AKT) |
| | : | |
| - against - | : | |
| | : | |
| VERIZON COMMUNICATIONS INC., | : | MEMORANDUM IN OPPOSITION TO |
| et al., | : | PLAINTIFF'S MOTION FOR |
| | : | SUMMARY JUDGMENT |
| Defendants. | : | |
| | : | **ECF CASE** |
| | : | |
| | : | |
| | x | |

Christian J. Pistilli (admitted *pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C.  20004-2401
202-662-5342
202-778-5342 (Facsimile)


*Attorney for Defendants*

Date:  April 23, 2012

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

INTRODUCTION ...................................................................................................... 1

COUNTER-STATEMENT OF FACTS ..................................................................... 2

ARGUMENT ............................................................................................................. 5

I.     PLAINTIFF'S CLAIM FOR BENEFITS IS GOVERNED BY THE
ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW (POINTS 1
AND 2)................................................................................................................ 5

II.    PLAINTIFF'S CONFLICT OF INTEREST ALLEGATIONS ARE MERITLESS
(POINT 3). ......................................................................................................... 9

III.   PLAINTIFF IS NOT ENTITLED TO A DEATH BENEFIT (POINT 4)........................ 14

IV.   PLAINTIFF IS NOT ENTITLED TO A SURVIVOR ANNUITY BENEFIT
(POINT 5). ......................................................................................................... 16

CONCLUSION.......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
572 F.3d 76 (2d Cir. 2009)........................................................................................8

*Conkright v. Frommert*,
130 S.Ct. 1640 (2010)..........................................................................................8, 10

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995).................................................................................................17

*Durakovic v. Building Service 32 BJ Pension Fund*,
609 F.3d 133 (2d Cir. 2010)....................................................................................9

*Frommert v. Conkright*,
535 F.3d 111 (2d Cir. 2008).....................................................................................8

*Kennedy v. Plan Admr. for DuPont Sav. & Inv. Plan*,
555 U.S. 285 (2009)...............................................................................................17

*Kirkendall v. Halliburton, Inc.*,
No. 07-CV-289, 2011 WL 2360058 (W.D.N.Y. June 9, 2011)...............................6

*Krauss v. Oxford Health Plans, Inc.*,
517 F.3d 614 (2d Cir. 2008).....................................................................................8

*McCauley v. First Unum Life Ins. Co.*,
551 F.3d 126 (2d Cir. 2008).....................................................................................8

*Metropolitan Life Insurance Co. v. Glenn*,
555 U.S. 105 (2008).................................................................................................9

*Nichols v. Prudential Ins. Co. of Am.*,
406 F.3d 98 (2d Cir. 2005)...............................................................................6, 7, 8

*Pagan v. NYNEX Pension Plan*,
52 F.3d 438 (2d Cir. 1995)...................................................................................5, 8

*Romero v. SmithKline Beecham*,
309 F.3d 113 (3d Cir. 2002).....................................................................................9

*Shepherd v. Worldcom, Inc.*,
No. H-03-5292, 2005 WL 3844069 (S.D. Tex. Sept. 9, 2005)................................6

**STATUTES**

29 U.S.C. § 1102 .................................................................................................................17

29 U.S.C. § 1104 .................................................................................................................17

29 U.S.C. § 1132(a)(1)(B) ................................................................................................1, 4

**OTHER AUTHORITIES**

29 C.F.R. § 2560.503-1 ...................................................................................................5, 6, 7

## INTRODUCTION

The sole question presented by plaintiff Richard Varney's motion for partial summary judgment is whether he is entitled "to recover benefits due to him under the terms of" the Verizon Management Pension Plan ("VMPP").  *See* 29 U.S.C. § 1132(a)(1)(B).  Because the unambiguous plan terms make clear that plaintiff is not entitled to the benefits he seeks, his motion should be denied.

In 2006, plaintiff was erroneously (and regrettably) informed by non-party Hewitt Associates LLC ("Hewitt"), a third-party benefits administrator for Verizon's pension plans, that he might be entitled to a survivor annuity benefit as a result of his mother's death.  In July 2006, during a routine pre-payment audit, Hewitt realized that its initial determination was in error and promptly informed plaintiff of this fact.  The undisputed evidence shows that Hewitt conclusively reversed its initial, erroneous determination –without any involvement on the part of Verizon – in July 2006.  Although Hewitt offered to explain the basis for its determination to plaintiff's counsel, counsel rebuffed this offer.

Plaintiff submitted a claim for benefits to the VMPP for the first time in November 2008, seeking both a survivor annuity benefit and a death benefit.  Thereafter, the responsible plan fiduciaries considered plaintiff's claim and timely issued written denial letters explaining the reasons for their decisions.  The sole question presented by plaintiff's motion is whether the fiduciaries' decision to deny plaintiff's November 2008 claim (and subsequent appeal) was arbitrary and capricious.  Although plaintiff asserts that this "highly deferential" standard of review does not apply, none of his arguments for *de novo* review has any merit.

Regardless of the applicable standard of review, the unambiguous plan terms make clear that plaintiff is not entitled to a benefit.  While plaintiff asserts that he is entitled to a death benefit, his brief improperly ellipsizes and fails to grapple with plan language flatly

refuting this assertion.  Plaintiff also alleges that he is entitled to a survivor annuity.  However, plaintiff fails to cite *any* plan language whatsoever in support of this demonstrably incorrect argument.  Accordingly, plaintiff's claim for benefits under the terms of the plan should be denied.

## COUNTER-STATEMENT OF FACTS

Plaintiff is the adult son of Lillian Varney and the administrator of her estate. (Amended Complaint (hereinafter, "Compl."), ¶¶ 21, 24.)  Ms. Varney was employed by a Verizon predecessor, NYNEX, from 1980 to 1993.  Ms. Varney left NYNEX's payroll in December 1993 upon the exhaustion of her 52-week, short term disability benefits, at which time she began receiving long-term disability benefits.  (Compl. ¶¶ 26-27; SOF ¶¶ 4-5.)  At the time of her termination, Ms. Varney was 47 years old, with 13.6 years of service.  (SOF ¶ 6.)

Ms. Varney continued to receive disability benefits under the NYNEX Long Term Disability Plan for Salaried Employees (or a successor plan) until she died in 2006, at age 59. (Compl. ¶ 27; SOF ¶¶ 7-8.)  At the time of her death, Ms. Varney was not married.  (SOF ¶ 9; *see* Compl. ¶ 23.)  Although she was eligible for a deferred vested pension, Ms. Varney died before reaching retirement age and so never commenced receiving a pension benefit.  (SOF ¶ 10.)

At all relevant times, Hewitt operated the Verizon Benefits Center and served as the third-party benefit administrator for Verizon-sponsored pension plans, including the VMPP. (SOF ¶ 11.)  In May 2006, Hewitt sent plaintiff an erroneous notification indicating that he may be eligible to receive a lump sum payment of $99,269.74 as Ms. Varney's surviving beneficiary under the plan.  (SOF ¶ 12 & Ex. D; *see* Compl. ¶ 33.)  In June 2006, Hewitt sent plaintiff a form, which plaintiff signed, acknowledging that

> Verizon reserves the right to correct any errors.  If it's determined at any time that the information provided on this statement conflicts with the benefit defined by the Verizon Management Pension Plan, the Verizon Management Pension Plan will prevail.  The federal law known as ERISA requires that a plan be operated in accordance with its terms.

(SOF ¶ 13 & Ex. E; *see* Compl. ¶ 34.)

Hewitt's error arose because a low-level Hewitt employee erroneously applied "more recent Plan rules providing a non-spousal 'Pre-Retirement Death Benefit'" to Ms. Varney. (SOF. Ex. I, at 9.)  In fact, Hewitt documents made clear that the "non-spouse beneficiary benefit is only provided to those who terminated *after* January 1, 2002."  (*See* Att. 2, at 2d.178 (emphasis added).)  Under the plan rules applicable to Ms. Varney, who terminated in 1993, no survivor benefit was due because Ms. Varney did not have a surviving spouse.

By July 20, 2006, Hewitt realized that its initial determination had been in error and that plaintiff was not entitled to any benefit:

> Caroline and I just reviewed all the documents and we agree that the participant is not owed a benefit. . . .  Our current requirements are clear on this.

SOF Ex. G (NYN10061); *see* SOF ¶ 14 & Ex. F (NYN10200) ("DO NOT SET UP FOR PMT. BENEFIT IS NOT DUE. . . .").  On July 20, 2006, Hewitt notified plaintiff of the error, and shortly thereafter mailed him a "claim form."  (SOF ¶ 16 & Ex. F (NYN10201-02); *see* Att. 3 (NYN00077).)

There is no record evidence that, at any time after July 20, 2006, Hewitt believed or determined that plaintiff was entitled to a benefit.  (Resp. to Pl's SOF ¶¶ 68-71.)  Nor is there any record evidence that any Verizon employee was involved in Hewitt's July 2006 correction of its error.  (*Id.*)  In November 2006, a Verizon Benefits Center representative offered to provide

plaintiff's counsel with information regarding Hewitt's determination that plaintiff was not entitled to a benefit, but plaintiff's counsel rejected this offer.  *See* Pl's Ex. I (HA 0196).

Plaintiff filed this lawsuit in 2007 seeking, among other things, benefits allegedly due under the terms of the plan.  (Dkt. 1.)  Defendants moved to dismiss, asserting, *inter alia*, that plaintiff's claims were premature because he had not yet pursued his administrative remedies under the plan.  Defendants' fully-briefed motion was filed with the Court on December 12, 2007.  (Dkt. 26.)  In September 2008, plaintiff voluntarily withdrew his complaint.  (Minute Order, Sept. 23, 2008.)  The Court thereafter denied defendants' motion to dismiss for failure to exhaust as moot, and the case was closed.  (*See* Resp. to Pl's SOF ¶ 45.)

Plaintiff filed an administrative claim for benefits with the VMPP for the first time in November 2008.  (Compl. ¶ 46; SOF ¶¶ 17-19 & Ex. H.)  The Verizon Claims Review Unit denied plaintiff's claim on February 20, 2009.  (Compl. ¶ 47; SOF ¶ 20 & Ex. I.)  After obtaining numerous extensions, plaintiff filed his administrative appeal on July 3, 2009.  (Compl. ¶ 48; SOF ¶ 21 & Ex. J.)  The Verizon Claims Review Committee ("VCRC") denied plaintiff's appeal on September 17, 2009.  (Compl. ¶ 49; SOF ¶ 22 & Ex. K.)  Plaintiff moved to re-open this litigation, and the Court granted plaintiff's motion in December 2009.  (Minute Order, Dec. 29, 2009.)

On February 10, 2012, plaintiff filed an amended complaint.  (Dkt. 57.)  Count I seeks "to recover pension benefits" purportedly due under the terms of the plan.  On March 21, 2012, plaintiff moved for summary judgment on this claim for benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).[1]

---

[1]      While plaintiff's complaint contains two additional counts, plaintiff has not moved for summary judgment on any claim other than his claim for benefits under Section 502(a)(1)(B).

Defendants incorporate by reference herein their response to plaintiff's Statement of Material Facts, which more fully addresses a number of the (largely immaterial) misstatements set forth in plaintiff's memorandum of law.

## ARGUMENT

## I.   PLAINTIFF'S CLAIM FOR BENEFITS IS GOVERNED BY THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW (POINTS 1 AND 2).

As plaintiff acknowledges (at 12) that "where, as here, the benefit plan gives the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the determination is [ordinarily] to be reviewed under the arbitrary and capricious standard."  Plaintiff nevertheless asserts that a *de novo* standard of review should apply to his claim because the plan allegedly failed to comply with ERISA's claims review regulations.  Plaintiff is mistaken, and this Court must apply the "highly deferential arbitrary and capricious standard of review" to the VCRC's denial of plaintiff's claim for benefits.  *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 444 (2d Cir. 1995).

Under ERISA's claims review regulations, a plan is required to "provide a claimant with written or electronic notification of any adverse benefit determination," including the "specific reason or reasons for the adverse determination" and "the specific plan provisions on which the determination is based."  29 C.F.R. § 2560.503-1(g).  The regulations specify that

> if a claim is wholly or partially denied, the plan administrator shall notify the claimant . . . of the plan's adverse benefit determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan.

29 C.F.R. § 2560.503-1(f)(1).  In the event that a plan fails to comply with these procedures, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan."  *Id.* § 2560.503-1(*l*).  Under a now-superseded version of this regulation, the Second Circuit had held that *de novo* review may apply to a claim that was "deemed denied" by virtue of

- 5 -

the plan's failure to comply with the regulations.  *See Nichols v. Prudential Ins. Co. of Am.*, 406

F.3d 98, 106-07 (2d Cir. 2005).

According to plaintiff (at 13), he is entitled to *de novo* review of his claim because

the plan failed timely to comply with the above-referenced regulations.  Plaintiff does not

dispute, however, that the plan timely denied the only written claim for benefits that he

submitted, or that the written denial of benefits provided in response to his claim fully complied

with the regulations.  (*See* SOF ¶¶ 18-20 & Ex. I.)  Instead, plaintiff appears to assert that the

plan failed properly to respond to various inquiries that he purportedly made prior to filing this

lawsuit.  This argument fails because, under the terms of the plan, none of these inquiries

constitutes a "claim" within the meaning of the applicable regulations.

The regulations define a "claim for benefits" as "a request for a plan benefit or

benefits made by a claimant *in accordance with a plan's reasonable procedure for filing benefit

claims*."  29 C.F.R. § 2560.503-1(e) (emphasis added).  Here, the VMPP specifies that "[a]ny

claim for benefits under the Plan" must (i) "be delivered in writing by the claimant,"

(ii) "identify the benefits requested," and (iii) "include a statement of the reasons why the

benefits should be granted."  (SOF Ex. A (NYN01392) (emphasis added).)  Thus, prior to

November 2008, plaintiff had never submitted a claim for benefits, the plan had no obligation to

provide plaintiff a written denial, and the plan's failure to do so did not trigger the "deemed

exhausted" provision of the regulations.  *E.g.*, *Kirkendall v. Halliburton, Inc.*, No. 07-CV-289,

2011 WL 2360058, at *5-7 (W.D.N.Y. June 9, 2011) (holding that a claim for benefits should

not be deemed exhausted where plaintiff failed to "follow[] the Claims Procedures specified in

the Plan – including the requirement that a claimant's request for review of an adverse

determination be submitted in writing"); *Shepherd v. Worldcom, Inc.*, No. H-03-5292, 2005 WL

3844069, at *5 (S.D. Tex. Sept. 9, 2005) ("Because Plaintiffs never filed a claim . . . in accordance with the Plan's claims procedure, the deemed exhaustion provision set forth in 29 C.F.R. § 2560.503-1(*l*) does not apply.").

The procedural posture of this case, moreover, precludes any assertion by plaintiff that his claim should be subject to *de novo* review.  After plaintiff originally filed this lawsuit in 2007, defendants moved to dismiss on the ground that plaintiff failed to exhaust his administrative remedies.  Rather than persist in arguing that his "claim" was or should be deemed exhausted, plaintiff elected to withdraw his complaint and the case was closed.  (Resp. to Pl's SOF ¶ 45.)  Plaintiff then submitted an administrative claim for benefits to the plan; his claim (and subsequent appeal) were denied in a manner that undisputedly complied with ERISA's claims review regulations; and plaintiff sought leave to re-open the lawsuit to challenge that denial.  Thus, there can be no legitimate dispute that the plan fully complied with all applicable regulations in deciding the only claim for benefits that is currently before the Court for review.

In *Nichols*, the Second Circuit stated that "a 'deemed denied' claim is entitled to *de novo* review" because the "claim is not denied by any exercise of discretion, but by operation of law."  406 F.3d at 109.  In other words, the rationale for *de novo* review in *Nichols* was that there had been no valid exercise of discretion to which the Court might defer.  Here, by contrast, the relevant plan fiduciaries fully considered plaintiff's claim for benefits (and his appeal of the denial of that claim).  Where, as here, the responsible plan fiduciaries have actually exercised their discretionary power to decide the claim at issue, that exercise of discretion is entitled to deference under ERISA.

*Nichols*, moreover, is no longer good law.  In *Frommert v. Conkright*, the Second Circuit applied *de novo* review to an interpretation of plan provisions first offered by the plan fiduciary during the course of litigation, outside the context of an administrative claim for benefits.  *See* 535 F.3d 111, 119 (2d Cir. 2008) (citing *Nichols*).  The Supreme Court reversed, holding that the plan administrator's interpretation of the plan was entitled to deference and criticizing the Second Circuit for creating "ad hoc exceptions" to the "broad standard of deference" applicable to the decisions of ERISA plan fiduciaries.  *Conkright v. Frommert*, 130 S. Ct. 1640, 1647 (2010).  Thus, creating an "ad hoc exception" to the "broad standard of deference" in cases where a claim is "deemed exhausted" would be inconsistent with the Supreme Court's decision in *Frommert*.[2]

In sum, plaintiffs is wrong to assert that the plan failed to comply with the applicable claims review regulations.  Plaintiff is likewise wrong that any such failure would result in *de novo* review of his claim.  There can be no legitimate dispute that the VCRC's interpretation of the plan terms is entitled to deference, and thus may not be disturbed unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 130 (2d Cir. 2008).[3]

---

[2]  The Second Circuit, moreover, has never held that *de novo* review applies under the revised version of the claims procedure regulations applicable to claims – like plaintiff's claim – brought after January 1, 2002.  *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 624 (2d Cir. 2008) (declining to "address[] whether *de novo* review similarly applies under the revised regulations").  *But see Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 80 (2d Cir. 2009) (suggesting in dictum that a "deemed exhausted" claim would be subject to *de novo* review under the revised regulations).

[3]  Plaintiff also asserts (in Point 2) that the Court should apply the *contra proferentem* doctrine when interpreting the plan provisions at issue in this litigation.  It is well-established, however, that this doctrine does not apply where, as here, the Court reviews the plan fiduciaries' decision "pursuant to the highly deferential arbitrary and capricious standard of review."  *See Pagan*, 52 F.3d at 444.

## II.    PLAINTIFF'S CONFLICT OF INTEREST ALLEGATIONS ARE MERITLESS (POINT 3).

In *Metropolitan Life Insurance Co. v. Glenn*, the Supreme Court held that a deferential standard of review applies even where a plan administrator operates under a conflict of interest, but that courts may take such conflicts into account as a "factor" – of greater or lesser significance, depending upon the "seriousness" of the conflict and the circumstances of the case – in applying the abuse of discretion standard.  *See* 554 U.S. 105, 110, 117 (2008).  Here, plaintiff points to an asserted conflict that he claims should be given weight in applying the arbitrary and capricious standard of review.  Plaintiff's argument falls wide of the mark, however, because there is no evidence of a material conflict – let alone a conflict that in any way affected the determination of plaintiff's claim.

Plaintiff asserts (at 15) that Verizon has a conflict because it "both evaluates and pays benefits claims."  Not so.  Claims under the VMPP are paid out of a trust that holds assets for the exclusive benefit of plan participants, *not* out of Verizon's operating revenue.

Nor is there any record evidence that any purported conflict of interest actually affected the decision to deny plaintiff's claim.  *See Durakovic v. Building Service 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010) ("No weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision.").  Indeed, the size of plaintiff's claim (less than $100,000) in comparison to the assets of the VMPP (over $16 billion as of 2008) -- *i.e.*, 0.0006% of the plan's assets -- belies any assertion that the denial of plaintiff's claim for benefits was motivated by a financial conflict of interest on Verizon's part.  *See, e.g.*, *Romero v. SmithKline Beecham*, 309 F.3d 113, 118 (3d Cir. 2002); *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995).

- 9 -

In response, plaintiff points to four circumstances allegedly demonstrating that Verizon's purported conflict of interest played a role in the denial of his claim.  None of plaintiff's assertions has any merit.

*First*, plaintiff asserts (at 15 & 21) that "Verizon's reversal of its initial decision" is evidence that the purported conflict impacted plaintiff's benefit determination.  However, the undisputed record evidence reveals that no Verizon employee ever reversed any decision at issue in this litigation.  Rather, non-party Hewitt initially determined that plaintiff was entitled to a benefit and subsequently corrected its own error, without any involvement on the part of Verizon.  (SOF ¶¶ 14-15.)  Indeed, the sole issue properly before the Court is whether the denial of plaintiff's November 2008 claim was arbitrary and capricious, and the record is clear that this claim was denied at every stage of the claims review process.  (Resp. to Pl's SOF ¶ 43.)

Moreover, as Chief Justice Roberts recently observed:  "People make mistakes.  Even administrators of ERISA plans."  *Frommert*, 130 S. Ct. at 1644.  As the Supreme Court went on to hold, a "single honest mistake in plan interpretation" does not justify "stripping [a] plan administrator of . . . deference."  *Id.*  Thus, the mere fact that Hewitt initially made a "single honest mistake" in determining whether plaintiff was eligible for a benefit does not justify "stripping" the VCRC of deference here.

*Second*, plaintiff asserts (at 15 & 21) that "Verizon's . . . refusal to provide Plaintiff with a claim form to facilitate an appeal of the denial of benefits demonstrates that Verizon's conflict of interest affected the determination."  Plaintiff is mistaken.  As an initial matter, plaintiff's July 2006 request for a claim form was directed at Hewitt, not any of the defendants in this action.  Moreover, Hewitt has submitted a sworn statement indicating that it "mailed plaintiff a 'claim form'" in July 2006.  (*See* Resp. to Pl's SOF ¶¶ 36-38, 43.)  At best for

- 10 -

plaintiff, there is a disputed issue of fact regarding whether he received a claim form from Hewitt; there is absolutely no record evidence supporting his assertion that "Verizon[] . . . refus[ed]" to provide him a claim form.[4]

*Third*, plaintiff asserts (at 15 & 21) that Verizon "refus[ed] to provide Plaintiff with a written denial of his claim," including "an explanation of the provisions on which the reversal was based." Not so. Plaintiff first submitted a claim for benefits in November 2008. Promptly thereafter, plaintiff received a written denial of his claim that specified the plan provisions upon which the decision was based and explained that Hewitt's initial error resulted from its erroneous application of the wrong plan provisions to plaintiff: "The error arose because the [Verizon Benefits Center] incorrectly applied the more recent Plan rules providing a non-spousal 'Pre-Retirement Death Benefit' payable to an estate in the event an unmarried participant dies without previously designating a beneficiary." (SOF. Ex. I, at 9; *see* SOF ¶¶ 17-20.)[5]

*Finally*, plaintiff claims (at 21) that Hewitt "continued to believe that a benefit was due and reversed its decision pursuant to Verizon's instruction." In addition to being legally irrelevant, this is an astonishing misrepresentation of the record evidence.

---

[4]     To the extent plaintiff means to suggest that a "claim form" is required in order to initiate a claim for benefits under the terms of the VMPP, he is mistaken. Rather, the plan merely provides that a claim must (i) "be delivered in writing by the claimant," (ii) "identify the benefits requested," and (iii) "include a statement of the reasons why the benefits should be granted." (SOF Ex. A (NYN01392). Thus, any alleged failure by Hewitt to provide plaintiff with a claim form (even if credited) in no way frustrated plaintiff's ability to file a claim under the plan's claims procedures.

[5]     To the extent plaintiff means to complain that he did not receive a written explanation earlier, any such assertion fails for substantially the reasons set forth in Part I, above. There was no requirement that plaintiff be provided with a formal written denial until after he submitted a "claim for benefits" in accordance with the plan's benefit claims procedures. It also bears mention that plaintiff's counsel rebuffed Hewitt's 2006 offer to provide a response to counsel's inquiries prior to filing suit. *See* Pls. Ex. I (HA 0196).

The undisputed record evidence is that a Hewitt employee, Krystal Prideaux, first caught Hewitt's error on July 18, 2006, during a routine pre-payment audit process. (SOF ¶ 14 & Ex. F (NYN10200); Resp. to Pl's SOF ¶ 67.) Thereafter, an internal discussion among various Hewitt employees ensued. On July 19, 2006, a low-level Hewitt employee stated, based upon his (erroneous) reading of an internal Hewitt requirements document, that "[i]n my opinion the estate is due a benefit."[6] (SOF Ex. G (NYN10062).) By July 20, 2006, however, after further review by at least two Hewitt managers, Hewitt reached a final decision:

> Caroline and I just reviewed all the documents and we agree that the participant is not owed a benefit. . . . Our current requirements are clear on this. They state under the Pre-January 1, 2002 termination: "The non-spouse benefit is only provided to those who terminated after January 1, 2002."

(SOF Ex. G (NYN10061); *see* Att. 2, at 2d.178.) There is no record evidence that any Verizon employee played any role whatsoever in this decision or that Hewitt's July 20, 2006 determination was not conclusive from Hewitt's standpoint. (SOF ¶ 15; Resp. to Pl's SOF ¶¶ 68-71.)

Amazingly, plaintiff nonetheless asserts (at 20) that, "[w]hile [Hewitt] continued to believe that 'the estate is due a benefit,'" Verizon "pressured the VBC to reverse its initial determination." The only apparent basis for this assertion is a *January 2007* email from a (non-attorney) Verizon employee, Michael Thivierge, in response to a request from Hewitt. (SOF ¶ 15; Pl's Ex. Q.) Yet, as Judge Tomlinson previously observed, "in light of the Thivierege E-mail being written six months after Hewitt's reversal, it is *impossible* to conclude that the e-mail

---

[6]      The requirements document is an "administrative manual" provided by Hewitt to assist its employees in responding to inquiries regarding the plans; it is not a "governing plan document." (SOF Ex. K, at 8.)

- 12 -

itself influenced Hewitt's decision." (Dkt. 52, at 10 (emphasis added).)[7] Thus, plaintiff's assertions that Verizon "pressured" Hewitt into reversing its decision is flatly contradicted by the undisputed record evidence. (*See* Resp. to Pl's SOF ¶ 71.)

Moreover, the question whether Verizon played a role in determining plaintiff's eligibility for benefits in 2006 is also legally irrelevant. Under the plan, the VEBC is the entity vested with the ultimate "discretionary power" to "interpret the plan and to decide all matters arising thereunder." (SOF Ex. A (NYN01390).) Thus, to the extent that Hewitt – as the third-party benefit administrator for Verizon-sponsored pension plans – had a question regarding the proper interpretation of plan provisions, it would have been entirely proper for Hewitt to consult the responsible Verizon fiduciaries (or their staff) on that subject. Indeed, defendants are unaware of any support whatsoever for the nonsensical proposition that it would somehow be improper under ERISA to consult the fiduciary vested with responsibility for interpreting plan provisions on questions of plan interpretation.

* * *

In sum, the VCRC's determination that plaintiff is not entitled to benefits under the terms of the plan must be reviewed under a deferential abuse of discretion standard. None of the justifications offered by plaintiff for the Court to diminish the deference owed to the VCRC has any basis in law or fact. In any event, for the reasons explained below, plaintiff is not entitled to plan benefits under any possible standard of review.

---

[7]    In that order, Judge Tomlinson granted plaintiff's request to take discovery regarding "whether Verizon previously pressured Hewitt to deny the claims." (Dkt. 52, at 10.) That discovery has now been completed, and plaintiff has failed to come forward with *any* record evidence of any (pre-litigation) contact between Verizon and Hewitt regarding plaintiff other than the January 2007 Thivierge email chain. (SOF ¶ 15.)

### III.      PLAINTIFF IS NOT ENTITLED TO A DEATH BENEFIT (POINT 4).

Plaintiff asserts (at 16) that he is entitled to a "Death After Termination" benefit pursuant Section 5.6 of the 1993 NYNEX Plan.  Plaintiff is mistaken.

Section 5.6 states, in pertinent part:

> a Death Benefit shall not be payable in the case of any person who dies after he has ceased to be an employee of a Participating Company, unless such person became disabled by reason of accident or sickness while an employee and continued disabled, until death, to such a degree as to be unable to engage in any gainful occupation.  In such cases a Death Benefit may be paid, in the discretion of the Committee. . .   *The amount of the Death Benefit, if any, shall not exceed the amount which could have been paid if the disabled person had died on the day he ceased to be an employee of a Participating Company.*

(SOF Ex. B (NYN00707) (emphasis added).)  For purposes of this opposition, defendants do not dispute that Ms. Varney became disabled by reason of sickness while an employee and continued disabled, until death, to such a degree as to be unable to engage in any gainful occupation. However, pursuant to the italicized portion of Section 5.6 – which plaintiff fails to quote or in any way acknowledge – the amount of any death benefit available to plaintiff is capped at the amount Ms. Varney's estate would have received if she "had died on the day [s]he ceased to be an employee of [NYNEX]."  (*Id.*)

Had Ms. Varney died at the time of her termination, she would not have been eligible for a death benefit under Section 5.1 ("Accident Death Benefit"), Section 5.2 ("Sickness Death Benefit") or Section 5.3 ("Pensioner Death Benefit") of the plan.  This is (among other reasons) because Section 5.4 of the plan, entitled "Eligible Beneficiaries," states that the "persons who may be beneficiaries of the Accident or Sickness Death Benefit or of payments on the death of a pensioner hereunder *are limited to the spouse and the dependent children and other dependent relatives of the deceased*."  (SOF Ex. B (NYN00701) (emphasis added).)  Thus,

as the VCRC determined, Ms. Varney would not have been eligible for a death benefit had she

died in December 1993 because she did not have an "Eligible Beneficiary" (*i.e.*, a spouse or

dependent) at that time:

> The Committee agrees that an Eligible Beneficiary, if one were to
> exist, would be eligible to receive a Death Benefit under [Section
> 5.6].  However, based on the information that has been provided,
> *the Committee has determined that Ms. Varney did not have an
> Eligible Beneficiary as described in Section 5.4 of the NYNEX
> Plan.*

(SOF Ex. K, at 8 (emphasis added).)

In sum, plaintiff's assertion (at 17) that "[n]othing in Section 5.6 states or implies

that the beneficiary must meet the requirements of Section 5 Paragraph 4" is flatly contradicted

by the portion of Section 5.6 that plaintiff improperly ellipsizes from his brief.  By its terms,

Section 5.6 requires the plan to determine whether a disabled former employee would have been

eligible to receive a sickness, accident or pensioner death benefit if the former employee had

died when his or her employment was terminated, and caps the benefit available under Section

5.6 at that amount.  Because Ms. Varney's estate would not have been eligible for an accident,

sickness or pensioner death benefit if she had died in December 1993, plaintiff is not entitled to a

"Death After Termination" benefit under Section 5.6 of the 1993 NYNEX Plan.[8]

---

[8]     Section 5.6, moreover, does not entitle anyone to any benefit whatsoever.  As made clear
by another portion of the plan language improperly ellipsized by plaintiff, any potential benefit
that "*may* be paid" under Section 5.6 is "*in the discretion of the Committee*."  (SOF Ex. B
(NYN00707) (emphases added).)  Accordingly, even if the VEBC or the VCRC had discretion to
provide plaintiff with a benefit under Section 5.6 (and they do not), there is no basis for
plaintiff's contention that he is *entitled* to a "Death After Termination" benefit under the plan.

## IV.   PLAINTIFF IS NOT ENTITLED TO A SURVIVOR ANNUITY BENEFIT (POINT 5).

Plaintiff also asserts that he is entitled to a "survivor annuity."  In so arguing, however, plaintiff fails to cite any provision of the governing plan documents.  Instead, plaintiff relies on the same – demonstrably incorrect – reading of the Hewitt requirements document that apparently led to Hewitt's initial, erroneous determination.  Because the applicable plan language makes clear that plaintiff is not entitled to a survivor annuity, plaintiff's argument fails.

Had Ms. Varney lived to age 65, she would have been eligible for a deferred vested pension.  Under Section 4.3(e) of the 1993 NYNEX Plan, deferred vested pensioners like Ms. Varney may be eligible to receive survivor annuity benefits.  However, Section 4.3(e)(ii) unambiguously states that the "*surviving annuitant may only be a spouse*."  Att. 4 (NYN00644).  Because Ms. Varney was unmarried when she died, the VCRC properly determined that her estate is not entitled to a survivor annuity.  (SOF Ex. K, at 5.)[9]

Notably, plaintiff nowhere disputes the VCRC's interpretation of Section 4.3 of the 1993 NYNEX Plan.  Nor does (or could) plaintiff cite any plan provisions suggesting that the terms of the 1993 NYNEX Plan do not apply.[10]  Instead, plaintiff appears to argue that the terms of the Hewitt requirements document somehow give rise to a benefit.  Plaintiff is doubly mistaken.

---

[9]   Any claim for a survivor annuity under Section 4.3(e) would also fail because Ms. Varney never elected (or was eligible to elect) a joint and survivor annuity benefit, as required by Section 4.3(e)(i).  (*See* Att. 4 (NYN00641-42); SOF Ex. K, at 5.)

[10]   Under Section 6.6 of the VMPP, plaintiff's entitlement to a benefit must be determined by reference to the terms of the plan in effect at the time when Ms. Varney's employment was terminated.  (*See* SOF Ex. K, at 2-3.)  Ms. Varney's employment was terminated in December 1993, and the applicable plan in effect at that time was the 1993 NYNEX Plan.  Thus, her eligibility for benefits must be determined by reference to that plan.  *See* Memorandum In Support Of Verizon Defendants' Motion For Summary Judgment, at 15-16.

*First*, ERISA requires plan fiduciaries to administer plans "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); *see Kennedy v. Plan Admr. for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009).  However, plaintiff has not asserted, and could not assert, that this Hewitt-created document "govern[s] the plan."  Rather, as reflected in the administrative record, the requirements document is "merely an administrative manual that [Hewitt] use[d] to assist with administration."  (SOF Ex. K, at 8.)  Thus, even if the Hewitt document were inconsistent with the terms of the plan, the VCRC would be required by ERISA to apply the terms of the plan (not the requirements document) in determining plaintiff's entitlement to benefits.  *See, e.g.*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995) ("plan administrators appear to have a statutory responsibility actually to run the plan in accordance with the currently operative, governing plan documents").[11]

*Second*, the requirements document itself makes clear that no survivor annuity was due to plaintiff (or Ms. Varney's estate).  Plaintiff selectively excerpts two pages from this document.  (*See* Pl's Ex. O.)  However, a portion of the "Qualified Preretirement Survivor Annuity" section omitted by plaintiff clearly states that "the non-spouse beneficiary benefit is only provided to those who" – unlike Ms. Varney – "terminated *after* January 1, 2002."  (Att. 2, at 2d.178 (emphasis added).)  Based on this provision, the Hewitt managers who reviewed the Varney file had no difficulty concluding that plaintiff was "not owed a benefit. . . . *Our current requirements are clear on this*."  (SOF Ex. G (NYN10061) (emphasis added).)  Thus, plaintiff's

---

[11]     Under ERISA, every employee benefit plan must provide "a procedure for amending [the] plan, and for identifying the persons who have authority to amend the plan."  29 U.S.C. § 1102(b)(3).  The VMPP provides that it may only be amended by Verizon's board of directors or, under specified circumstances, its most senior human resources officer or its chief ERISA counsel.  (*See* Att. 5 (NYN01397).)  Plainly, the terms of the plan could not be amended by a document prepared by Hewitt, such as the requirements document relied on by plaintiff.

(in any event irrelevant) assertion that the Hewitt requirements document supports his claim for a survivor benefit misses the mark.

In sum, plaintiff does not cite any plan provisions in support of his request for an annuity benefit.  Nor could he do so, because neither he nor Ms. Varney's estate is eligible for such a benefit under the applicable plan terms.  Accordingly, plaintiff's request for a survivor annuity should be denied.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in defendants' motion for summary judgment, which is incorporated herein by reference, the Court should deny plaintiff's request for summary judgment on his claim for benefits purportedly due under the terms of the plan.

Respectfully submitted,

/s/ Christian J. Pistilli
Christian J. Pistilli(admitted *pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C.  20004-2401
202-662-5342
202-778-5342 (Facsimile)

*Attorney for Defendants*

April 23, 2012

- 18 -