FRANK & ASSOCIATES, P.C.
Peter A. Romero, Esq. (PR-1658)
500 Bi-County Boulevard, Suite 112N
Farmingdale, New York 11735
(631) 756-0400
Promero@laborlaws.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RICHARD VARNEY, JR. individually and as
Administrator to the Estate of Lillian Varney,      Civil Case No.: 07-695 (LDW) (AKT)
Deceased

                      Plaintiff,

     -against-

VERIZON COMMUNICATIONS, INC.,
VERIZON MANAGEMENT PENSION PLAN
and VERIZON EMPLOYEE BENEFITS
COMMITTEE,

                    Defendants.
------------------------------------------------------------x


REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT


FRANK & ASSOCIATES, P.C.
Peter A. Romero, Esq. (PR-1658)
500 Bi-County Boulevard, Suite 112N
Farmingdale, New York 11735
(631) 756-0400
Promero@laborlaws.com

*Attorneys for Plaintiff*

## TABLE OF AUTHORITIES

**Cases**

*Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1026 (9th Cir. 2008) .... 7

*Chalmers v. Quaker Oats Co.*, 61 F.3d 1340 (7th Cir. 1995) .......................................................... 7

*Conkright v. Frommert*, 130 S.Ct. 1640 (2010) ............................................................................... 5

*Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004). ....................... 8

*Diamond v. Reliance Standard Life Ins.*, 672 F.Supp.2d 50 (S.D.N.Y. 2009) ........................10

*Durakovic v. Building Service 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010) .............. 11

*Frommert v. Conkright*, 433 F.3d 254, 265-66 (2d Cir. 2006) ....................................................... 5

*Martin v. Hartford Life And Accident Ins. Co.*, 2012 WL 1352875 (2d Cir. April 19, 2012) ...... 11

*Maxwell v. Metro Life Ins. Co.*, 2009 WL 2868234 (N.D.N.Y. 2009) ...........................................10

*McCauley v. First UNUM Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008) ................................... 8

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17, 128 S.Ct. 2343 (2008) ..................... 5

*Miller v. American Airlines, Inc.*, 632 F.3d 837, 847-48 (3d Cir. 2011) ........................................ 7

*Romero v. SmithKline Beecham*, 309 F.3d 113 (3d Cir. 2002) ....................................................... 7

*Smith v. Novelis*, 2009 WL 3164798 (Sept. 29, 2009 N.D.N.Y ................................................10

*Strope v. UNUM Provident Corp.*, 2010 WL 1257917 (W.D.N.Y. 2010) .....................................10

*Varney v. NYNEX Management Pension Plan*, 2001 WL 6934773at *6 (Dec. 30, 2011,
E.D.N.Y.) ......................................................................................................................................... 7

As explained more fully in the Memorandum of Law in Support of Plaintiff's motion for summary judgment, Verizon failed to provide Plaintiff with any explanation for its denial of Plaintiff's claim for benefits until after this litigation was commenced. In its opposition to Plaintiff's motion for summary judgment, Verizon's post-hoc explanation asserts that Hewitt's error arose because it "erroneously" applied more recent Plan rules providing a non-spousal Pre-Retirement Death Benefit (Def. MOL in Opp. at page 3). Since Mrs. Varney was not married on the date of her death, the Qualified Preretirement Survivor Annuity is payable to her estate, regardless of whether Plaintiff is a designated beneficiary:

**Qualified Preretirement Survivor Annuity**

**Eligibility**

A beneficiary is eligible for the Qualified Preretirement Survivor Annuity (QPSA) if all of the following are satisfied:

The participant was fully vested with five years of service as of the Date of Death…

The participant's death occurred before the Benefit Commencement Date of the first pension payment to the participant.

The participant is survived by a beneficiary unless the participant has designated one or more beneficiaries (natural or otherwise) in equal fractions with the consent of the spouse if married.

If the participant is not married on the Date of Death, the death benefit will be payable to the participant's designated beneficiary or beneficiaries, or, if none has been designated, the benefit will be payable to the participant's estate…

A waiver of the QPSA was not in effect.

After the commencement of this action, Defendants contended that this benefit was not available under the terms of the plan in effect at the time of Lillian Varney's separation from employment and appeared in a later plan, after Mrs. Varney was terminated, but before she died. Hewitt, however, noted that the Management Rules provided that payments may commence

based on prior rules unless the current plan provides for more liberal treatment of the group

(Romero Decl. Ex. P):

> OK – in my opinion I would say the estate is due a benefit. Here is what I found in the Mang Requirements. In my opinion the benefit would be *calculated* under the NYNEX rules, but the beneficiary designation/payment timing falls under the current Management rules.
>
> **Qualified Preretirement Survivor Annuity**
> - If the participant is not married on the Date of Death, the death benefit will be payable to the participant's designated beneficiary or beneficiaries, or, if none has been designated, the benefit will be payable to the participant's estate. In the event that the beneficiary is a minor, the benefit will be paid to the legal guardian for the benefit of the minor.
>
> ALSO…
> - Payments may commence based on prior commencement rules unless the current plan provides for more liberal treatment of this group.
>
> What this means to me is that we would use current plan rules….Agree/Disagree? I can't find specific requirement info to support this, so what evidence did we have not to pay it? I'll continue to look in the Plan. Maybe this should go back to Vz Charlotte?
>
> Thanks,
>
> Norm Kazumura
> Hewitt Associates
> Norm.Kazumura@hewitt.com
> Direct: (847) 575-8103

Verizon's opposition to Plaintiff's motion also asserts that Hewitt mailed Plaintiff a claim form (Def. MOL at 3). This is completely unsubstantiated. It fails to even identify the date that the claim form was allegedly sent to Plaintiff. Verizon has failed to offer any documents as either proof of mailing.

Notably, Verizon's opposition references a November 9, 2006 letter from Plaintiff's counsel to Verizon (Romero Decl. I) and suggests that Plaintiff's counsel rejected Verizon's offer to provide information over the telephone (Def. MOL in Opp. at p. 3-4). However, it is undisputed that Verizon refused to provide a written explanation for its denial of benefits which

identified the specific provisions of the plan upon which its decision was based.   Indeed, Plaintiff's counsel's letter states:

> I received your call which stated you could provide answers to my letter…on the phone. That will not do.  I am entitled to receive and request an immediate written response.

ERISA requires an employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial…" 29 U.S.C. §1331(1).  The regulations require that the notification "set forth, in a manner calculated to be understood by the claimant" "[t]he specific reason or reasons for the adverse determination," "the specific plan provisions on which the determination is based," and a description of the plan's review procedures, deadlines, and claimant's right to bring a civil action, 29 C.F.R. 2560.503-1(g)(1).   The purpose of these requirements is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.  However, Verizon failed to provide a written explanation until Plaintiff commenced this lawsuit.

Notwithstanding its failure to timely provide Plaintiff written notice of the adverse benefits determination, Verizon contends that its decision to deny benefits should be entitled to absolute deference (Def. MOL in Opp. at 6).  Verizon's claim to deference is predicated on obscurantism.  Remarkably, Verizon's opposition asserts that, "*Plaintiff does not dispute…that the plan timely denied the only written claim for benefits that he submitted, or that the written denial of benefits provided to his claim fully complied with the regulations.*"  Id.  In essence, Verizon contends that it had no obligation to timely provide written denial of Plaintiff's claim for benefits based on its specious claim that Plaintiff failed to make a request for plan benefits "*in accordance with a plan's reasonable procedure for filing benefit claims,*" since the Verizon

3

Management Pension Plan specifies that a claim for benefits under the Plan "shall be delivered in writing by the claimant."

However, it is undisputed that Plaintiff faxed a letter to Verizon on April 18, 2006, requesting pension benefits and providing a copy of the Letters of Administration appointing him administrator of Lillian Varney's estate. (Romero Decl. Ex. C). It is also undisputed that Verizon sent Plaintiff a package of documents, dated May 23, 2006, which included a Beneficiary Notice of Rights, Beneficiary Pension Elections Worksheet, and a document entitled Starting Your Beneficiary Pension Benefit (Romero Decl. Ex. E). The paperwork instructed Plaintiff to sign, date and return the Beneficiary Election Authorization form. There is no dispute that Plaintiff timely returned a signed and dated Beneficiary Election form. (Romero Decl. Ex. F).

There is no merit to Defendants' argument that Plaintiff failed to deliver a written request for benefits. Moreover, the May 23, 2006 package that Defendants sent to Plaintiff instructed:

**Denial of Benefits**

If you feel you have been denied a benefit (in whole or in part) to which you believe you are entitled under the Pension Plan, you may file a claim for benefits by calling the Verizon Benefits Center and requesting a Claim Initiation Form.

Verizon's own documents demonstrate that on or about July 20, 2006, Plaintiff called the Verizon Benefits Center and requested that a claim form be sent to him. (Romero Decl. in Opp. Ex. S). Verizon failed to provide Plaintiff with a Claim Form until after the commencement of this action.

It is undisputed that Verizon is the same party that both evaluates and pays benefits claims. Thus, there exists a structural conflict of interest, which the Court must take note of, in conjunction with other circumstances that affect the likelihood that the benefits decision was

biased. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17, 128 S.Ct. 2343 (2008). Despite Verizon's conflict of interest, and its refusal to provide Plaintiff a written explanation for its denial of benefits until Plaintiff commenced suit, Verizon argues that its decision should nevertheless be immune from heightened scrutiny on the basis of the Supreme Court's decision in *Conkright v. Frommert*, 130 S.Ct. 1640 (2010). *Conkright*, however, did not involve a conflict of interest, or the kind of procedural irregularities and bad faith that marred the handling of Plaintiff's claim.

In *Conkright*, the plaintiffs were employees who left the company in the 1980's, received lump sum distributions of retirement benefits that had earned up to that point, and were later rehired. Plaintiffs brought suit under ERISA to challenge the phantom account method that the Plan used to adjust their present benefits to account for their past distributions. The District Court granted summary judgment for the Plan, applying a deferential standard of review to the Plan Administrator's interpretation of the Plan. Although the Second Circuit vacated and remanded, holding that the Plan Administrator's interpretation was unreasonable, the Second Circuit did *not* apply a de novo standard of review. See *Frommert v. Conkright*, 433 F.3d 254, 265-66 (2d Cir. 2006) ("It is clear, under either an arbitrary or capricious standard or as a matter of law, that the Plan administrator's conclusion...is unreasonable.).[1]

On remand, the District Court considered an alternative approach proposed by the Plan Administrator for adjusting the plaintiffs' present benefits in light of their past distributions. The Plan argued that the District Court should apply a deferential standard of review to this approach, and accept it as a reasonable interpretation of the Plan. The District Court did not apply a

---

[1] In a footnote, the Court stated, "It is not settled whether a de novo or arbitrary and capricious standard of review applies...we find the Plan Administrator's conclusion to be unreasonable under either standard." Id at fn.11

deferential standard of review.  Nor did it accept the Plan Administrator's interpretation.  On appeal to the Second Circuit, the Plan argued that the District Court erred in failing to consider the Plan Administrator's proposed approach under a deferential standard of review.  The Second Circuit, applying a "one-strike-and-you're out" approach, affirmed in part, holding that the District Court was correct not to apply a deferential standard "where the administrator had previously construed the same terms and we found such a construction to have violated ERISA." In essence, the Second Circuit held that where a plan is found to have violated ERISA, a remedy proposed by Plan is subject to *de novo* review, solely because the Court of Appeals had overturned a previous interpretation by the Administrator.  In so doing, the Court "crafted" its own exception to deference.

While the Supreme Court rejected the new exception to deference applied by Second Circuit, *Conkright* did nothing to change *Glenn*'s requirement that the Court must consider a structural conflict of interest and other circumstances that affect the likelihood that the benefits decision was biased when determining whether the Plan Administrator's denial of benefits was reasonable.  Verizon's argument that there can be no conflict of interest because claims under the Plan are paid out of a trust and not out of its operating revenue (Def. Mol in Opp. p. 9) is devoid of merit.  After *Glenn*, the Courts have rejected the argument advanced here by Verizon, because even in an actuarially grounded plan, the employer provides the monetary contribution and any money saved reduces the employer's projected benefit obligation.  *Miller v. American Airlines, Inc.*, 632 F.3d 837, 847-48 (3d Cir. 2011); *Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1026 (9th Cir. 2008).

Verizon also argues that the Court must disregard its structural conflict because of the "small size" of Plaintiff's claim, citing *Romero v. SmithKline Beecham*, 309 F.3d 113 (3d Cir.

6

2002) and *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340 (7ᵗʰ Cir. 1995). However, as this Court previously noted, *Romero* and *Chalmers* are not Second Circuit decisions and are not binding on this Court and, in any event, "[n]either case stands for the proposition that there can never be a conflict of interest when a claim is small." *Varney v. NYNEX Management Pension Plan*, 2001 WL 6934773at *6 (Dec. 30, 2011, E.D.N.Y.).

While Verizon insists that none of its employees influenced Hewitt's decision, the administrative record demonstrates that a Verizon employee, Michael J. Thivierge, sent an email to Kevin Cammarata at Hewitt in which he urged that "*No pension benefit is due to Ms. Varney's son.*" (Romero Decl. Ex. Q). Later that day, at 4:16 p.m., Thivierge sent an email to Juan Rodriguez at Hewitt instructing him that "*No pension benefit is available or due to her son*" and instructing Rodriguez to "update the log accordingly." (Romero Decl. Ex. T). The following day, Rodriguez sent a reply email to Thivierge stating "*I have closed out the issue, from a date perspective, and relayed the response to Customer Service for follow up with the son.*" Id. Although Verizon maintains that this communication was written after Hewitt caught and corrected its own "mistake," Hewitt's workflow states that: "*Per Verizon*, the only eligible person to be named pension beneficiary would've been a spouse." (Romero Decl. in Opp. Ex. R). This statement belies Verizon's claim that Hewitt independently caught its own error.[2]

Even under the arbitrary and capricious standard, it is clear that Verizon imposed a standard that was not required by the provisions of the Plan and interpreted the Plan in a manner that is inconsistent with its terms. The Court must "interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004). Verizon's interpretation of the

---

[2] While Verizon claims that Krystal Prideaux of Hewitt determined that no benefit was due Plaintiff, Ms. Prideaux testified that she does not "recall anything from this case." See Romero Decl. Ex. U.

plan is at odds with a common-sense understanding of its terms.   Where, as here, "the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *McCauley v. First UNUM Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008).

Section 5.6 of the June 17, 1993, NYNEX Management Pension Plan provides for payment of a benefit when a person dies after he has ceased to be an employee of a Participating Company if such person became disabled by reason of accident or sickness while an employee and continued disabled, until death.  (Pl. Rule 56.1 Statement ¶50).

It is undisputed that Lillian Varney became disabled by reason of sickness while an employee and continued disabled, until her death, to such a degree as to be unable to engage in any gainful occupation. Mrs. Varney was an employee of NYNEX and its successor, VERIZON, from 1980 to December 1993, and she was on permanent disability from on or about January 1, 1994, until she died on January 10, 2006.

However, Verizon denied Plaintiff's claim for benefits under this provision because:

*"the Committee has determined that Ms. Varney did not have an Eligible Beneficiary as described in Section 5.4 of the NYNEX Plan."*

Section 5.4 is entitled "Eligible Beneficiaries," and limits the "persons who may be beneficiaries of the Accident or Sickness Death Benefit or of payments on the death of a pensioner"... "to the spouse and the dependent children and other dependent relatives of the deceased." The limitation on eligible beneficiaries in Section 5.4, by its own terms, applies only to the benefits described in the three paragraphs that precede 5.4. While each paragraph that precedes Section 5.4 specifically refers to the eligibility requirements of Section 5.4, Section 5.6 does not include any language limiting who may be an eligible beneficiary and makes no reference to Section 5.4.

In a specious attempt to justify the denial of benefits, Defendants point to the last sentence of Section 5.6, which merely caps the amount of the benefit and does not refer to eligibility:

> *The amount of the Death Benefit, if any shall not exceed the amount which could have been paid if the disabled person had died on the day he ceased to be an employee of a Participating Company.*

It strains logic to suggest that a limitation on the *amount* of the benefit—the amount which could have been paid if the disabled person had died on the day he ceased to be an employee—is a limitation regarding which persons who are eligible to receive the benefit. It is clear that no rational claims administrator could have read the limitations on eligibility in Section 5.4 to apply to the benefit provided in Section 5.6. The provision in Section 5.6 cannot fairly be read as requiring that the recipient of benefits meet the eligibility requirements set forth in Section 5.4. Nothing in Section 5.6 states or implies that the beneficiary must meet the requirements of Section 5.4.[3]

Moreover, Hewitt had determined that a benefit was payable to Mrs. Varney's estate under the Qualified Preretirement Survivor Annuity. (Romero Decl. Ex. P). Where, as was the case with Mrs. Varney, the participant is not married on the Date of Death and there is no designated beneficiary, the QPSA benefit is payable to the participant's estate. While Verizon contends that this benefit appeared in a later plan, Hewitt noted that the Management Rules provided that payments may commence based on prior rules unless the current plan provides for

---

[3] While Verizon also maintains that Plaintiff is not *entitled* to a benefit under Section 5.6 because the Plan language states that benefit *may* be paid "*in the discretion of the Committee*," Verizon, in fact, did not exercise any discretion under this provision and has offered no reason why Plaintiff should be denied a benefit under a valid exercise of discretion.

more liberal treatment of the group and therefore Plaintiff is entitled to a benefit under the current Management Rules. (Romero Decl. Ex. P).

It is undisputed that Verizon is the same party that both evaluates and pays benefits claims. Thus, there exists a structural conflict of interest, which the Court must take note of, in conjunction with other circumstances that affect the likelihood that the benefits decision was biased. *Martin v. Hartford Life And Accident Ins. Co.*, 2012 WL 1352875 (2d Cir. April 19, 2012). The fact that the claims under the Verizon Management Pension Plan are paid out of a trust and not out of its operating revenue is not controlling, since the rejection of Plaintiff's claim will reduce future contributions by Verizon. *Durakovic v. Building Service 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010). Verizon argues that there is no evidence that the denial of Plaintiff's claim was actually influenced by its conflict of interest. However, "[e]vidence that a conflict affected a decision may be categorical (such as a history of biased claims administration) or case specific (such as an administrator's deceptive or unreasonable conduct), and may also have a bearing on whether a particular decision is arbitrary and capricious." Id. at 140.

Here, the evidence reflects that a Verizon employee influenced Hewitt's decision regarding Plaintiff's eligibility for benefits. Moreover, Verizon failed to provide a claim form to Plaintiff and unreasonably refused to provide Plaintiff with a written explanation for the denial of benefits until Plaintiff commenced this lawsuit. These procedural irregularities are among the factors the Court must consider, in addition to Verizon's conflict of interest, in determining whether Verizon's decision to deny benefits was arbitrary and capricious and suggest a higher likelihood that the conflict affected Verizon's benefits decision. *Novick v. Metropolitan Life Ins. Co.*, 764 F.Supp.2d 653, 665-66 (S.D.N.Y. 2011); *Strope v. UNUM Provident Corp.*, 2010 WL 1257917 (W.D.N.Y. 2010); *Diamond v. Reliance Standard Life Ins.*, 672 F.Supp.2d 530, 535-36

(S.D.N.Y. 2009); *Maxwell v. Metropolitan Life Ins. Co.*, 2009 WL 2868234 (Sept. 1, 2009 N.D.N.Y.); *Smith v. Novelis*, 2009 WL 3164798 (Sept. 29, 2009 N.D.N.Y.).

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Plaintiff's motion for summary judgment should be granted.

Dated: Farmingdale, New York
      May 7, 2012

*Respectfully submitted,*

FRANK & ASSOCIATES, P.C.

By: _____
      Peter A. Romero, Esq. (PR-1658)
      500 Bi-County Boulevard, Suite 112N
      Farmingdale, New York 11735
      (631) 756-0400 Tel.
      (631) 756-0547 Fax
      promero@laborlaws.com

*Attorneys for Plaintiff*